COMMONWEALTH *vs.* MIN SING & others.

Suffolk.    March 24, 1909. — May 20, 1909.

Present : KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Practice, Criminal*, Exceptions, Charging jury.    *Witness*, Impeachment of.    *Pleading, Criminal*, Indictment.    *Accessory.*

At the trial of an indictment for murder before two judges of the Superior Court, the counsel for the defendants made orally an offer of evidence which was excluded by the judges.    The defendants' counsel indicated an intention to save an exception to the exclusion of the evidence, and the court said that which fairly implied that an exception had been saved.    It was arranged that the defendants' counsel should put their offer of proof in writing and present it to the judges. On the morning of the next day of the trial such an offer in writing was presented to the judges, and was not referred to again by the judges or the counsel until the case had been given to the jury, when it was discovered that the judges understood that the arrangement for the presentation of the offer in writing was in order that they might consider it in writing instead of ruling upon the oral statement.    The counsel for the defendant believed that the court had ruled and had excluded the evidence and believed that their exception to the ruling was recognized and had been saved to them.    The judges refused to allow the exception, and, upon a petition to prove exceptions, a commissioner to whom the petition was referred found the facts above stated and also found "that the words of the court gave the counsel reasonable cause to believe that their right was saved to them."    *Held*, that the exception should be allowed.

At the trial of an indictment for murder against a number of defendants, all of whom were foreigners of the same race, the defendants offered to prove that a person, who had assisted the police officers as an interpreter in their efforts to ascertain the facts and to arrest the guilty parties, had tried to induce certain four persons to give false testimony against the defendants and had paid to each of them a substantial sum of money upon his promise to give such false testimony, and also that a police officer, who helped to arrest some of the defendants and assisted in obtaining evidence of the facts communicated to the district attorney, was implicated in the effort to procure false testimony from

some of the four persons. The evidence thus offered was excluded. None of the four persons, from whom it was alleged that the false testimony was sought, testified at the trial, and the evidence was not offered in contradiction of or to affect the credibility of any witness. *Held*, that the exclusion was proper; that there was no such legal identity or privity between the interpreter or the police officer and the Commonwealth as to make proof of such dishonest and criminal conduct on their part admissible to disparage the prosecution of the case.

At the trial of an indictment for murder against a number of defendants, where one of the witnesses for the government is a police officer who helped to arrest some of the defendants and assisted in obtaining evidence of the facts communicated to the district attorney, if evidence is offered to impeach his testimony, to the effect that he was implicated in an attempt to procure false testimony against the defendants, the evidence thus offered is admissible as affecting his credibility, but, if, in a case where such evidence was offered and excluded, it appears that the witness testified only as to undisputed matters and to nothing that tended to show guilt as to any of the defendants who excepted to the exclusion of the evidence, such an exception will not be sustained, because, if the jury had believed the evidence which the defendants offered and in consequence had given less credence to the statements of the witness, the result of the trial could not have been affected.

In a criminal trial, as in a civil one, it is within the discretion of the presiding judge or judges to refuse to permit a witness to be asked on his cross-examination a question which he already has answered twice to the same effect, especially where the question relates to an immaterial matter.

In an indictment for murder in the first degree the words "deliberately premeditated " are not necessary, a charge in the form prescribed by R. L. c. 218, § 67, being sufficient.

In an indictment for being accessory before the fact to a murder it is sufficient to follow the form prescribed by R. L. c. 218, § 67. If the defendant needs more definite information, § 39 of the same chapter gives him a right, on motion, to a bill of particulars.

In a criminal, as in a civil case, the presiding judge or judges properly may refuse to instruct the jury upon a particular part of the evidence, it not being the duty of a judge to deal with particular facts any further than seems to him necessary for the proper presentation of the issues in the case.

KNOWLTON, C. J. This case comes before us upon a petition to establish exceptions taken at the trial of the defendants upon an indictment for the murder of four men by shooting. The persons killed were all Chinese, and so are the defendants. Ten men were included as defendants in the indictment, of whom nine were charged with murder and one was charged with being an accessory to the murder before the fact. One of the defendants died during the trial, and the others were found guilty, eight of them of murder in the first degree, and one of being an accessory to the murder before the fact. Upon a motion for a new trial made in behalf of all the defendants the verdict was set aside as to four of them, on the ground that it

was not sufficiently supported by the evidence. The other five are before us upon this petition to prove exceptions. As to one of those whose motion for a new trial was granted, the district attorney entered a *nolle prosequi* upon the indictment.

It was found by the commissioner and is conceded by the Commonwealth that all but one of the exceptions stated in the bill were properly saved, and that the petitioners, in good faith, made an honest effort to present truly the exceptions alleged to have been taken. The Commonwealth therefore agrees that all of the exceptions but this one are before us for consideration. The question in regard to this exception grew out of a misunderstanding between the presiding judges * and the attorneys for the defendants. The commissioner, in his report, has made very full and elaborate findings of fact, and has reported to the court the question of law whether, on his findings, the exception is proved.

There was an offer by the defendants to show that one Yee Wah, who had assisted the police officers as an interpreter in their efforts to ascertain the facts and to arrest the guilty parties, had endeavored to induce four different persons to give false testimony against the defendants, and had paid to three of these persons $50 each, and to the other $43, on his promise to give such testimony. Neither of these persons testified in the case at any stage of the proceedings. At the same time there was an offer of testimony tending to show that one Linton, a police officer who helped arrest some of the defendants, and who assisted in obtaining evidence of the facts and communicating it to the district attorney, was implicated in the effort to procure false testimony from some of these persons. This offer was made in a conference between counsel and the court, immediately after an objection by the Commonwealth to one of the questions put by the defendants' counsel. The defendants' attorneys urged the admissibility of the testimony, and the court said, in substance, "The evidence is not admissible." Mr. Bartlett, for the defendants, made a motion with his hand to the official stenographer, as a request to come to the bench where the conference was in progress. The court then inquired of Mr. Bartlett why he wanted the stenographer, and he replied

* *Pierce & Brown,* JJ.

that he wanted him to take down and put upon the record what had been said, meaning the offer of proof and the action of the court thereon. The court replied, "You need not do that. Your rights are saved. You can trust the court. Put it in writing." The stenographer, who had risen from his seat, sat down again. It was arranged that the defendants' counsel should put their offer of proof in writing and present it to the judges. The witnesses referred to in the oral offer were excused from further attendance. This conference was on Friday, and the written offer of proof was presented to the judges in the morning of the following Monday, substantially as it had been stated orally, except that it did not contain a part of the evidence offered orally, which the judges said at the conference they would admit, and which subsequently was admitted in the form of a deposition. The writing was not shown to the district attorney, and no reference was afterwards made to the subject by the judges or the counsel until after the case had been given to the jury, when one of the defendants' attorneys said to the judges, " I suppose our rights are saved on our offer of evidence that the court rejected," and one of the judges replied that he did not understand that they had any rights, as the court had not been asked to rule upon the written offer. The commissioner found that the " defendants' counsel had made an oral offer of proof, . . . that all three of said counsel believed that the court had ruled and had excluded the evidence, that said counsel believed that their exception to the ruling was recognized and that their exception was saved to them." He also found " that the words of the court gave the counsel reasonable cause to believe that their right was saved to them." The subsequent difference of opinion arose from an understanding of the judges that the arrangement for the presentation of the offer in writing was in order that the judges might consider it as it would appear in writing, instead of ruling upon the oral statement; while the counsel understood it to be that the matters might be shown in a more satisfactory form than they had taken in the discussion which had been going on during the conference, and that the offer drawn by counsel might take the place of a stenographer's report of what had been offered and passed upon at the conference.

Upon the findings of the commissioner it appears that the defendants' counsel indicated an intention to save an exception to the supposed ruling, and that the court said that which fairly implied that an exception had been saved. In determining the legal effect of action between parties, the reasonable interpretation of what is said or done is controlling. On the evidence, we are of opinion that the exception was legally saved. Were it not for the arrangement to have the offer put in writing, this would be plain. The judges' understanding that this formal writing was to be treated as a presentation of the offer *de novo*, for future action, does not appear to have been so stated to the counsel as to be understood by them, or to deprive them of the exception which they supposed and had reason to suppose had been saved. See *Clemens Electric Manuf. Co.* v. *Walton*, 173 Mass. 286; *Thwing* v. *Clifford*, 136 Mass. 482; *Kenny* v. *Ipswich*, 178 Mass. 368. We shall, therefore, consider the questions of law that are raised by the bill of exceptions.

The offer of evidence was founded on the familiar rule that such dishonest and criminal conduct of a party in the preparation or trial of a case is in the nature of an admission, implied from his conduct, that his claim is false and unjust. *Egan* v. *Bowker*, 5 Allen, 449. *Hastings* v. *Stetson*, 130 Mass. 76. *Simes* v. *Rockwell*, 156 Mass. 372, 374. *Boyle* v. *Columbian Fire Proofing Co.* 182 Mass. 93, 103.

Where the person sought to be bribed does not testify, there is not such a probability that the influence attempted to be exercised upon him has been exercised upon other witnesses, as to make the attempt competent, as indicating that the other witnesses have testified falsely. But such conduct of a party implies a consciousness that his case cannot rest upon its merits, and is in the nature of an admission that he is in the wrong in his contention before the court. The principle and the rule founded upon it are applicable to conduct of a defendant in a criminal case, as well as to that of a party in a civil suit. *Commonwealth* v. *Wallace*, 123 Mass. 400. *Commonwealth* v. *Webster*, 5 Cush. 295, 316. *Commonwealth* v. *Sullivan*, 156 Mass. 487. *Allen* v. *United States*, 164 U. S. 492. Of course, if the person who seeks to procure perjured testimony in a trial is himself a witness testifying as to matters in dispute, his misconduct and manifest

bias may be shown to affect his credibility. If it is conceivable that a prosecuting officer, legally representing the Commonwealth, might be guilty of such misconduct, the question whether his wrong could be shown as an admission affecting the Commonwealth is one that has not been decided in any of the cases cited in the argument, nor in any that we have discovered in our independent investigation. There are numerous cases in which, when a party instituting and promoting a criminal prosecution was himself a witness and attempted to obtain false testimony from others, or otherwise to present the case unfairly, his misconduct has been held competent to affect his credibility. If we assume without deciding that such an attempt on the part of an official public prosecutor, representing the Commonwealth in the trial of a criminal case, might be proved to affect the rights of the public in their interest to convict and punish the guilty, it does not follow that an act of one merely assisting in ascertaining facts, or performing official duties as a sheriff or constable or police officer in the detection of criminals, can be shown as an admission of the Commonwealth. Plainly, the declarations of such an officer would not be competent evidence against the State. The reasoning applied to the declarations of the victim of a murder, offered as evidence in the trial of the murderer, is equally applicable to such a case. In *Commonwealth* v. *Densmore*, 12 Allen, 535, 538, the court said: " We do not see that the deceased stood in any such relation towards the Commonwealth as to render his declarations admissible as evidence. It cannot be properly said that in the prosecution of offences, *mala in se*, the Commonwealth asserts a private right or maintains an individual interest, in any such sense as to be affected or bound by hearsay statements of those who may have been the victims or objects of a criminal act on their property or person. There is no such legal identity or privity between them and the Commonwealth as to render their statements admissible in behalf of those who are charged with the commission of a crime." This is equally true of policemen and other similar officers who are performing official duties in ascertaining facts and bringing them to the attention of the public prosecutor who officially represents the people in the trial of persons accused.

In all cases that have come to our attention, where the attempt has been to show such misconduct of some one other than the party to the suit, the question has been whether it was shown, by fair inference or otherwise, that the misconduct was authorized or ratified by the party himself. In some of the cases, nothing less than clear proof of authority by direct evidence is permitted. In *Nowack* v. *Metropolitan Street Railway*, 166 N. Y. 433, where a person was given full authority in the preparation of evidence for the trial of a case in which a corporation was a party, it was decided by a majority of four judges to three, that his representation of the corporation in that business was so complete that his wrong might be treated as an act of the corporation, which might be used against it as an indication that its cause was unjust. This case is the most favorable to the contention of the present defendants of any that has come to our knowledge, but it differs widely from the case at bar. In the first place, it was a civil suit involving nothing but private rights, in regard to which the parties could act independently with an unquestioned right of control. The person who procured the evidence was acting by direct appointment as an agent and personal representative of a private corporation. In the case at bar, the police officer, Linton, was merely performing his official duties in a department which gives him no jurisdiction to represent the Commonwealth in determining what shall be done or what shall be left undone at the trial of an accused person. That the prosecuting officers had any knowledge or suspicion of an attempt to procure false testimony is not suggested or suspected by the counsel for the defendants. Yee Wah, to whose conduct nearly all of the excluded testimony was directed, was not even a police officer. He was merely used as an assistant and interpreter by police officers in their investigations. There is high authority, as well as sound principle, against allowing a public prosecution to be prejudiced by the words or acts of persons having no relation to the case, other than in the performance of their duties as police officers in arresting suspected persons and endeavoring to ascertain facts. *Commonwealth* v. *Ryan*, 134 Mass. 223. *The Queen's case*, 2 B. & B. 282, 302. Wigmore on Evidence, § 280, and cases cited in note.

We come now to the effect of such misconduct when the person guilty of it is a witness in the case. Plainly, it may be proved to show his bias and affect his credibility. Most of the reported cases are of this kind. In the conference between the counsel and the court, the excluded testimony was not offered in terms for this purpose. It appears by the bill of exceptions that, after a statement of most of the offered testimony, " the court insisted that this was not in contradiction of any testimony that was in the case. The defense replied that it was not offered for that purpose or with that end in view. It was offered on the broad ground that any attempt on the part of any person connected with either party to a suit, to procure false testimony, made such an attempt admissible in evidence, and urged that sufficient evidence had been introduced that Yee Wah was so connected with the government as to make his actions proper matter for investigation by the jury. . . . Mr. Woodman (the junior counsel for the defendants) suggested that Linton had been a witness, but Justice Pierce replied, ' that the question is much broader than that.' " Yee Wah, whose alleged conduct was the principal subject of the discussion, was at no time a witness, and it was not suggested that Linton had testified as to any facts in dispute, nor argued that the evidence was competent to affect his credibility as a witness. It is a familiar rule that where evidence is offered for a specific purpose and is rightly excluded upon that offer, it is not open to the party to contend that the evidence should have been admitted for another purpose. *Brown* v. *Leach*, 107 Mass. 364. *Hathaway* v. *Tinkham*, 148 Mass. 85. *Britton* v. *Worcester*, 123 Mass. 309.

It was said by the judges at the conference that the testimony of Sachs, which had a tendency to show that the witness Feeney had been influenced by Yee Wah, might be admitted as bearing upon Feeney's statements. It seems probable from the bill of exceptions that the excluded testimony was not offered for the purpose of affecting the credibility of Linton as a witness; but only upon the ground then urged in the argument. We are inclined, however, *in favorem vitæ*, to resolve the doubt on this point in favor of the defendants, and to consider the testimony as if offered on all grounds. So considered, it well might have been admitted, since Linton was called as a witness. But it

does not follow that the exceptions must be sustained. We must inquire whether the bill of exceptions shows that the defendants now before the court were prejudiced by the exclusion of the evidence. This depends upon whether the testimony of Linton was important on disputed, material points, affecting the excepting defendants. Unless his testimony was material, they would not have been helped by the admission of other testimony affecting his credibility. Except a brief statement in regard to one of the defendants who is not a party to the proceedings before this court, to which we will refer hereafter, the only testimony that Linton gave, as stated in the bill of exceptions, is as follows: "He testified that at about a quarter past eight, on the night of August second, he was told to go down to Chinatown by his captain, and from that time had been in charge of the police activities of the case. During the services which he rendered, he arrested Hom Woon with one Hart, another police officer ; Wong Duck with Ou Tong, Soo Hoo Lee and Moy Mow ; Wong How and Warry Charles with the same Chinaman and Yee Jung with a Chinaman named Gee Yung. That the three Chinamen first named accompanied him in his search for different Chinamen implicated in the shooting, and he visited places where these men told him to go and look; that he relied upon them in going for these different people and getting information from them. He also testified that he had received certain bullets and pieces of lead, which were introduced as exhibits, from Moy Sing, Moy Wing, Lee Fong and other Chinamen and, with the exceptions of the weapons and clothing, had received and retained all the exhibits in the case." So far as appears, these matters were wholly immaterial to any disputed point in the case. On the question whether these defendants killed the murdered men, it was of no consequence that he was told to go to Chinatown and that he had charge of the police activities in the case. On this question, it was of no consequence that he was the officer who made the arrest of some of the defendants and that three Chinamen, none of whom were defendants, accompanied him in searching for different Chinamen, and that he visited places where they told him to go and look. There is nothing in any of these statements that tends to show guilt on the part of any of the defendants. It does not

appear that they told him anything tending to show guilty knowledge on their part, or that he discovered anything founded on their statements, or that made these statements or his discoveries of any consequence as indicating the guilt of any of them, either circumstantially or otherwise. Nor is the fact that he received certain bullets and pieces of lead from certain Chinamen other than the defendants material. It was an undisputed fact that many shots were fired in very quick succession, the government witnesses estimating that there were as many as forty or fifty, and there was uncontradicted testimony that many bullets and bullet marks were found near where the shooting occurred. There was no evidence in the case, nor did the Commonwealth contend, that any particular bullet fired by any one of the defendants, who the testimony showed fired at Chin Let, Chin Min Quin and Wong Shue Chung, was the particular bullet that killed any of these men. He did not testify to anything in regard to the weapons and clothing, except that he did not retain them in his custody, and there is nothing to show what other exhibits there were, if any, besides the bullets and pieces of lead. If there was any materiality in any part of this testimony, it bore only upon matters that were overwhelmingly proved by other witnesses and were not in dispute. If all of this testimony were stricken out, it does not appear that the weight of the evidence against the defendants would be affected in the slightest degree. His credibility as a witness, testifying to these matters, is not shown to have been of any weight in establishing facts on which the Commonwealth relied for the conviction of the defendants.

The burden is upon the defendants to show that they were injured by the ruling excluding the testimony; that is, that the excluded testimony, if believed by the jury, might have changed the result as to them. They have only shown that if the evidence had been admitted, the jury might have given less credence to these statements of this witness; but these statements were only of facts which were wholly immaterial or not in dispute. The giving of a greater or less degree of credence to the statements could not have affected the result, and the defendants were not harmed by the ruling.

Linton testified to one other matter which had no bearing

upon the conviction of any of the defendants now before this court. Wong Duck was arrested in Quincy, and Linton was one of three officers who arrested him. " Linton testified concerning this same arrest that the interior was lighted by gas, and that when he entered at the front door he called Wong Duck into a sleeping room from the kitchen at the rear, and told him to dress. That thereupon Wong Duck took from a pasteboard box upon a stand in that room a revolver, and passed it to his employer, one Jung Bak Goon, at the same time saying something in Chinese; that the latter took the revolver and claimed that it was his, and said that the chief of police, one Burrill, who lived across the street from the laundry where the arrest was being made, had given him authority and license to keep it." This testimony was of no importance except in reference to the charge against Wong Duck. A new trial has been granted to Wong Duck, and he is not a party to the proceedings in this court. The excepting defendants were not affected by this testimony, for there is no evidence of any such relation between them and Wong Duck as to make his words or conduct at the time of his arrest, or Linton's account of his words or conduct, of any materiality to the question whether they were innocent or guilty. The excepting defendants, therefore, were not harmed by the exclusion of the offered testimony in reference to the credibility of Linton in this part of his statement.

The defendants excepted to the refusal of the judges to permit a witness to be asked this question in cross-examination : " Or did Soo Hoo Wing say to you at that time, 'it didn't make any difference whether he was or not; you identify him'?" It was in the discretion of the court to say how far the counsel should be permitted to go in cross-examination. The witness had just made an answer which included the answer to this question. In the answer to the second question before, he had said that Soo Hoo Wing did not speak at all on that occasion. His answer to the last question was confirmatory of the former answer. There was no error of law in excluding the question. Besides, the subject of the inquiry was his identification of Dong Bok Ling, one of the defendants who has been granted a new trial, and all the testimony on the subject has become immaterial.

The motion to quash was rightly overruled. The words,

"deliberately premeditated," are not necessary to a charge of murder, and a charge in the statutory form without these words is a charge of murder in the first degree. R. L. c. 218, §§ 38, 67. *Commonwealth* v. *Snell,* 189 Mass. 12. *Commonwealth* v. *Holmes,* 157 Mass. 233. *Commonwealth* v. *Best,* 180 Mass. 492. *Commonwealth* v. *Gilbert,* 165 Mass. 45, 53. If the pleader desires to charge murder only in the second degree, the statute provides a way in which he may do so. R. L. c. 218, § 67. Under a charge of murder in the first degree, the proof may show that it is in that degree for either of the causes stated in the statute, or may show that it is in the second degree. R. L. c. 207, § 1.

The charge against Warry Charles as accessory before the fact followed the statute and was sufficient. R. L. c. 218, § 67. If more definite information was needed by the defendant, he was entitled, upon motion, to a bill of particulars. R. L. c. 218, § 39.

The judges were not called upon to give the fourth instruction requested,* in the terms in which it was presented. All but the last clause of it was given in substance. The suggestion that in considering the explanation of their flight, given by the defendants, the jury should consider whether the defendants, by reason of their extraction and teaching, were accustomed to act from different motives from those which prompt the English-speaking race, was a request to charge upon a particular part of the evidence bearing upon the explanation, and it was not the duty of the judges to deal with particular facts any further than seemed to them necessary properly to present the issues in the case.

*Exceptions overruled.*

*C. W. Bartlett & H. H. Pratt, (J. C. Woodman* with them,) for the defendants.

*M. J. Dwyer,* Assistant District Attorney, for the Commonwealth.

---

* The fourth instruction requested was as follows : "If the jury shall find that any of the defendants left Boston, or were apprehended in flight, after the shooting, this fact shall not be taken against them, if the jury believe the explanation of such flight offered by the defendants alleged to have fled; and in weighing the truth or falsity of such explanation, the jury may consider whether the defendants offering it are not, by reason of their extraction and teaching, accustomed to act from different motives than those which prompt the English-speaking race."