## COMMONWEALTH *vs.* ALFRED BORNSTEIN.

Suffolk.　November 5, 1929. — November 25, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Subornation of Perjury. Witness,* Cross-examination, Privilege against self incrimination. *Evidence,* Inference, Competency, Relevancy and materiality. *Practice, Criminal,* Argument to jury, Exceptions.

At the trial of an indictment for subornation of perjury, a witness testified that he had been implicated in certain thefts of property, had delivered the stolen goods to the defendant and had received money from him; that he told the defendant that he had made a statement to the police; that the defendant, upon the witness's saying that he had not signed the statement, said, "We can fix that up"; that the defendant employed an attorney to defend the witness against a charge of larceny and instructed the witness what to tell the attorney; that the defendant promised to aid the witness and his family if the witness were acquitted; that the witness thereafter testified under oath before the grand jury that he had not been implicated in the thefts; that such testimony was false; and that "he relied on what . . . [the defendant] had said to him, and was induced by what . . . [the defendant] promised, to testify as he did before the grand jury." *Held,* that

(1) Such testimony, with other evidence, warranted a verdict of guilty;

(2) Evidence, offered by the defendant, that the witness was afraid that a third person, who was present at the time the witness made the statement to the police and who was not a witness at the trial, would "frame" the witness, and other evidence respecting the third person, properly was excluded in the discretion of the trial judge;

(3) Testimony, by a second witness implicated in the thefts, that he had sent stolen goods to the defendant and had received money from him, was competent to show that stolen goods were sold to the defendant and to corroborate the first witness;

(4) There was no error prejudicial to the defendant in the admission of testimony by the second witness as to his attitude in refusing to answer certain questions at a previous trial;

(5) There was no error in excluding a question to the second witness on cross-examination, whether the first witness had said to him that a certain person wanted to "frame" him: the question related to a collateral matter; furthermore, the record did not show what answer to the question was expected.

There was further evidence at the trial above described that the defendant sent the first witness to the second witness to tell him to

"sit tight and do not say anything, and if possible I will get him out on bail, and I will take care of him." There was other evidence of a similar nature. The record stated that the district attorney, in his argument to the jury, made a reference to the fact, that the second witness had pleaded his constitutional privilege at a previous trial of the defendant on a charge of receiving stolen goods, "as the basis for an inference that he pleaded such privilege at the suggestion of . . . [the defendant] and pleaded it with a corrupt intention." The record did not show what the district attorney said to the jury. The judge charged the jury that no inference could be drawn against the defendant if he in good faith suggested to the second witness that he exercise his constitutional rights, but that the jury might draw such an inference as they thought proper if "there is a corrupt suggestion along that line." *Held*, that

(1) Nothing appeared to show that the district attorney's argument was improper;

(2) On the evidence, there was no error in the instructions to the jury.

INDICTMENT, found and returned on April 9, 1928.

Material evidence at the trial of the indictment in the Superior Court before *Burns*, J., is stated in the opinion. The defendant was found guilty and alleged exceptions.

The case was submitted on briefs.

*J. P. Walsh*, for the defendant.

*W. J. Foley*, District Attorney, & *F. M. J. Sheenan*, Assistant District Attorney, for the Commonwealth.

CARROLL, J. The defendant, Alfred Bornstein, was convicted of subornation of perjury. The perjury alleged in the indictment was that of one McDonald before the grand jury on December 12, 1927, in a criminal investigation against Bornstein charging him and Samuel Bornstein with conspiracy to steal and with receiving stolen goods. The perjury of McDonald related to a statement made by him to a police officer wherein McDonald admitted he had broken into railroad cars and had disposed of the stolen goods. Before the grand jury McDonald falsely swore that this statement made to the police inspector was false. The indictment alleged that McDonald swore he did not participate in the breaking and entry and larceny of the goods, and was "innocent of participation in said breaks"; that this testimony was false and known to McDonald to be false; that before the perjury was committed, the de-

fendant feloniously and maliciously did "incite, move, procure, aid, counsel, hire and command" McDonald to commit the perjury.

In the statement made to the police officer McDonald confessed that he was guilty of the larceny of the goods in question. He admitted, according to this statement, that the goods were sold to the Bornsteins. In the case against Bornstein on the charge of subornation of perjury, McDonald testified that the statement made by him to the police inspector "was in accord with his memory" and "he then intended to tell the truth"; that before the grand jury on December 12 he swore that "he was not implicated in the breaks . . . but that he was absolutely innocent in any part in them"; that "as a matter of fact he . . . was implicated in the breaks . . . that on one occasion he disposed of the property stolen . . . and delivered the stuff to" the defendant Bornstein; that "he received as his share of the loot over $100" and received the money from the defendant; that "between December 5 and December 12" he told him he had made the statement to the police inspector; that Bornstein asked him if he signed it, and when Bornstein was told that it was not signed he said to McDonald, "that is not good. All you have got to do is to go with me to my lawyer and fix it up"; that Bornstein said to him, "You ain't going to go against me, are you? We can fix your case up for you and you will be all right . . . . We can help you out a whole lot if you will help me out"; that when told McDonald had made the statement to the police officer Bornstein said, "We can fix that up."

McDonald further testified that before Bornstein went to his lawyer with McDonald he told McDonald to tell the lawyer "that . . . [he] never carried any stuff in . . . [his] truck, . . . [he] was not in any break, never seen" the defendant Bornstein "and did not sell him any goods"; that ". . . [he] told . . . [the lawyer] just what . . . [Bornstein] told . . . [him] to say to him"; that Bornstein said to McDonald if the latter was found not guilty he (Bornstein) would set him up in the trucking business; that he said: "I will fix you up in the trucking business and I will

take care of your wife and your children and pay you $300."

McDonald also testified at the trial of Bornstein that his testimony before the grand jury was false; that he relied on what Bornstein had said to him, and was induced by what Bornstein promised to testify as he did before the grand jury; that at his trial for larceny Bornstein employed counsel to defend McDonald; that after McDonald was convicted he sent a note to Bornstein "asking him to pay some bills that he had promised to pay and that he never answered the letter"; that, Bornstein gave him money at various times. There was additional evidence tending to show that Bornstein procured the commission of perjury by inciting, instigating or persuading McDonald to commit the crime of perjury.

The case was submitted to the jury properly. There was sufficient evidence to warrant a verdict that Bornstein was guilty of the charge. See *Commonwealth* v. *Douglass*, 5 Met. 241; *Commonwealth* v. *Pollard*, 12 Met. 225.

It appeared that when the statement by McDonald was made to the police inspector one Moxham was present with others. On cross-examination of McDonald, he was asked: "did you under oath express the opinion that you were afraid that Moxham would frame you?" He answered, "Yes." This evidence was excluded and the defendant excepted. McDonald was further interrogated with reference to Moxham, the defendant offering to show in cross-examination of McDonald that Moxham made inducements to McDonald to have him involve the Bornsteins. There was no error of law in excluding the testimony relating to Moxham. We do not understand that he was a witness at the trial. The judge could in the exercise of his discretion exclude this testimony. *Commonwealth* v. *Min Sing*, 202 Mass. 121, 131.

Dennis W. Gallagher was implicated with McDonald in the theft of the goods; he was a witness at the trial of Bornstein. The defendant excepted to the evidence of Gallagher that he sold the stolen goods to Bornstein and

received $250 "the first time" and $410 on another occasion. This evidence was competent as tending to show that the stolen goods were sold to the defendant and to corroborate the testimony of McDonald; it was admitted properly. Gallagher was further examined as to his attitude in refusing to answer certain questions at a former trial; assuming the defendant saved his exception, we see nothing prejudicial to the rights of the defendant in admitting this evidence, and it was not error to admit it. Gallagher was also asked on cross-examination if McDonald said to him that Moxham wanted to frame Gallagher. The Commonwealth's objection to this was allowed. This evidence was excluded properly; it related to a collateral matter and there is nothing to show what answer to the question was expected.

The bill of exceptions states that in the argument of the district attorney he referred to the fact that Gallagher, at the trial of the Bornsteins for receiving stolen goods, pleaded his constitutional privilege "as the basis for an inference that he pleaded such privilege at the suggestion of Bornstein and pleaded it with a corrupt intention." In his charge the judge gave the instruction that Gallagher could decline to testify on the ground that his answers might tend to incriminate him; that, if one in good faith tells another who is about to testify that he can stand on his constitutional rights, no inference can be drawn against one making this suggestion; but, if "there is a corrupt suggestion along that line, not standing alone, but taken in connection with other evidence in the case, so that . . . a reasonable inference might be drawn, taking that with other evidence in the case, that one did notify another to stand upon his constitutional rights . . . a jury would have the right to draw such reasonable inference from that, — not alone that, but from that and other evidence in the case, — as the jury . . . thought proper." There is nothing to show what the district attorney said to the jury. Assuming an exception was saved to his remarks, it does not appear that his argument was an improper one. There was evidence that McDonald was sent by

Bornstein to see Gallagher and to tell him to "sit tight and do not say anything, and if possible I will get him out on bail, and I will take care of him," and there was other evidence bearing on this aspect of the case. The charge in view of all the evidence was accurate. If Gallagher was corruptly induced to stand on his constitutional rights, the jury could take this fact into account.

We have examined the remaining exceptions of the defendant and find no error in the rulings made. There was no error in the conduct of the trial.

*Exceptions overruled.*