JOHANNES W. BEEKES *vs.* SAMUEL CUTLER.

Suffolk. December 5, 1947. — February 5, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, WILKINS, & SPALDING, JJ.

*Negligence,* Employer's liability: appliance, assumption of risk. *Evidence,* Admissions and confessions, Consciousness of liability. *Contract,* Of employment.

In an action against one not insured under the workmen's compensation act, for injuries sustained when the plaintiff was cut by a saw in the course of a day's casual employment, evidence, that the defendant after the accident asked the plaintiff if he could not "fix it up with" his regular employer "so as to make believe a board struck" him so that he could "collect insurance," was admissible to show an admission by the defendant of consciousness of liability to the plaintiff.

Evidence that one regularly employed was requested by a former employer to work for him on a Saturday for the day and thereafter was requested to work for him again on the following Saturday warranted a finding that the employment on the second Saturday was a new employment.

Evidence of the circumstances in which a skilled cabinet maker, casually employed for a day in July, 1943, by one not insured under the workmen's compensation act, was injured by contact of his fingers with a circular saw when a board which he was sawing on a table was stopped by a nail, protruding from the table and not discovered by the workman when he inspected the table before beginning work, warranted findings that he did not contractually assume the risk of injury from the presence of the nail and that his injury was due to negligence of the employer in leaving the nail in the table when removing a block therefrom shortly before the day of employment.

TORT. Writ in the Superior Court dated August 19, 1943.

The action was tried before *Good,* J.

*E. B. Goldberg,* for the defendant.

*D. L. Allison,* for the plaintiff.

DOLAN, J. This action of tort is brought to recover compensation for personal injuries alleged to have been

sustained by the plaintiff as a result of the defendant's negligence. The case was tried to a jury who returned a verdict for the plaintiff. The defendant's exceptions to the admission of certain evidence, to the denial of his motion for a directed verdict, and to the denial of his eighth, ninth, fourteenth, fifteenth, and sixteenth requests for instructions to the jury bring the case before us.

The jury could have found the following facts. The plaintiff was a skilled cabinet maker and had worked upon all kinds of wood working equipment, including circular saws, for almost thirty years prior to July 31, 1943. At that time he was steadily employed in operating a circular saw for Charles Drew, Inc. In that month the defendant, who conducted a cabinet shop and for whom the plaintiff had once worked, asked the plaintiff to do a favor to him by coming in on Saturday morning, July 24, 1943, "for the day" and working for him, and the plaintiff did so. Thereafter the defendant requested the plaintiff to work for him at his shop on Saturday, the thirty-first, and the plaintiff responded. On that day he was given boards by the defendant to saw according to certain dimensions. The boards were respectively five inches, ten inches, and ten and one eighth inches wide. The table used in the defendant's shop for sawing boards had a small slot through which the circular saw ran. The slot was "$\frac{1}{2}$" to $\frac{5}{8}$"." It was an adjustable slot but there were no "adjustment boards with it." On occasions a piece of plywood was "put on and nailed to the table, and then the saw was set and came through, leaving just a slot the size of the saw," which was "a little over $\frac{3}{16}$" wide." On Saturday morning, July 31, before starting to saw the boards, the plaintiff made "regular inspection as is usual in all shops." He went over the table with his hand and took out three or four nails an inch long, "inch brads," saying to the defendant, "It isn't a very nice way to leave it with these nails sticking up," and the defendant replied, "Well, I didn't know." The brads were of the type usually employed in nailing the plywood to the table to reduce the width of the slot. The plywood commonly used for that purpose was not on the

table on July 24, 1943, nor on July 31 when the plaintiff started to work. On July 31 he was sawing a board "15" or 16" wide," "that board supposed to be 10½" wide." When the board was about "three quarters" in it stopped; he held it and "couldn't do anything else than hold it because if we let go it will kick back, liable to knock you, so . . . [he] held it, and . . . as . . . [he] did the thing . . . turned around on . . . [him] . . . he reached over and tried to grab the handle to shut off the machine and after that the fingers . . . [were] off." He was holding the board with his right hand and it came in contact with the saw and a portion of each of three fingers was cut off. He cried out to the defendant who came to him, and the plaintiff requested him to get a cloth and tie it around his arm and to call an ambulance. The plaintiff then started walking "to keep up . . . [his] nerve" and went over to the table and found a shiny nail in the table. "It was just far enough distant beyond the 8½" to get me caught there; . . . the shiny nail was over a half in the table; . . . it stuck out about a ¼"." The board the plaintiff was sawing was "stopped" by that nail. It was of the same type as those used to fasten a board to reduce the slot. He spoke to the defendant about it and the defendant said, "I don't know where it came from," and "got all excited." There were no nails in the table on July 24 when the plaintiff was working for the defendant. The defendant testified that it is necessary that the table be smooth; that "a nail sticking up ¼" above the table would make the sawing of the wood dangerous; that if a nail is sticking up ¼" above the table and a board hits it, then there is danger of an accident." The plaintiff was taken to a hospital and was visited there by his wife and by the defendant on the following Sunday or Monday. The plaintiff testified that during this visit and in the presence of his wife the defendant said to the plaintiff, "Couldn't you fix it up with Mr. Drew [the plaintiff's regular employer] so as to make believe a board struck you so you can collect insurance?" The plaintiff replying said, "Nothing doing, I am not going to do that." The plaintiff's wife testified in like manner.

On that occasion the defendant left the hospital with the plaintiff's wife and said to her, "I don't understand why it happened; John was a good workman and a good man; just a week before my son and myself took out the nails and fixed the block." The defendant was not insured under the workmen's compensation act.

The testimony to the admission of which the defendant excepted, so far as argued, was that given by the plaintiff and his wife to the effect that the defendant asked the plaintiff whether he could not fix it up with his regular employer ("Mr. Drew") "so as to make believe a board struck . . . [him (the plaintiff)] so . . . [he could collect] insurance," and the refusal by the plaintiff so to do. The only argument addressed to us by the defendant as to this subject matter is that the testimony was "highly prejudicial and should not have been admitted at least without appropriate instruction from the court." The testimony was admissible as evidence of an admission by the defendant that, conscious of being liable to respond to the plaintiff in damages on account of the accident, he was seeking fraudulently to induce the plaintiff to make a false claim against his regular employer, who was insured under the workmen's compensation act, and by so doing to relieve the defendant of liability to compensate the plaintiff for the injuries in question and to defeat the ends of justice. *Egan* v. *Bowker*, 5 Allen, 449, 451–452. *Commonwealth* v. *Min Sing*, 202 Mass. 121, 125–126. *Commonwealth* v. *Bornstein*, 269 Mass. 181, 184. Wigmore on Evidence (3d ed.) § 280. The statement attributed to the defendant was not a narrative of what had happened.

The defendant's sole contention concerning the refusal by the judge to give his eighth, ninth, fifteenth and sixteenth requests for instructions is that: "Inasmuch as the plaintiff did not know who put the nail in the table or how long it had been there and there wasn't any evidence of the defendant's knowledge of its existence, the court should have granted the defendant's requests for ruling, numbered 8, 9, 15 and 16. The defendant's request for ruling numbered 14 should have been granted for the reason that our court

has established the law that a protruding nail of such dimension cannot be held to be negligence, and in any event not unless it can be shown that the defendant knew or ought to have known of the defect long enough before the plaintiff was injured to have repaired or remedied it." All of these requests were in terms that called for a determination by the judge of facts. They were refused rightly. *Reidy* v. *Crompton & Knowles Loom Works,* 318 Mass. 135, 140.

The defendant's exception to the denial of his motion for a directed verdict remains to be considered. Since the defendant was not insured under the workmen's compensation act, the defences of contributory negligence on the part of the plaintiff and voluntary assumption of the risk resulting in his injury are not open to the defendant, G. L. (Ter. Ed.) c. 152, § 66, but the defence of contractual assumption of the risk is open to the defendant, since St. 1943, c. 529, § 9A, taking away that defence from employers not insured under the workmen's compensation act was not enacted until June 12, 1943, to take effect as of November 15, 1943, *Godon* v. *McClure, ante,* 1, 4, and cases cited, and the accident in the present case occurred before the effective date. The evidence warranted a finding by the jury that the employment of the plaintiff by the defendant on July 31, 1943, was a new employment. The issues, therefore, are whether it could have been ruled rightly that the plaintiff had contractually assumed the risk resulting in his injuries and, if it could not have been so ruled, whether the judge could have ruled rightly that the evidence would not warrant the jury in finding that the plaintiff's injuries were caused by the defendant's negligence.

It is the duty of an employer to provide to an employee reasonably safe and suitable tools and equipment with which to do his work. The duty, however, is limited by the doctrine of contractual assumption of risk to the effect that the employer owes no duty to one entering his employment to change the condition of the premises or the equipment or methods of operation which obviously existed and were apparently contemplated by the parties when

the contract of services was made. *Godon* v. *McClure, ante,* 1, 4, and cases cited. Could it have been ruled rightly on the evidence that the condition that caused his injury was open or obvious to the plaintiff? It is true that the plaintiff testified that he knew the dangers accompanying the operation of circular saws, that knowing them he made an inspection as was customary in his trade, ran his hand over the table, discovered certain inch brads in the table and removed them, but that he did not discover until after the accident the shiny brad sticking up one quarter of an inch from the table, which the jury could find stopped the board he was sawing. See *McFaden* v. *Nordblom,* 307 Mass. 574, 575. On the other hand, the jury could find that the equipment was in fact in a dangerous condition before the plaintiff started to work on the day of the accident, that the defendant knew that if a nail was sticking up one quarter inch above the table when one was using the circular saw there was danger of an accident, and that such was the condition when the plaintiff started to work on the day of the accident and in consequence was injured. Unless that condition was existing and manifest when the plaintiff started to work on that day, it could not be found properly that he had contractually assumed the risk of the condition that caused his injury. This relates to the issue of the defendant's negligence, as to which the burden of proof is on the plaintiff. *Sylvain* v. *Boston & Maine Railroad,* 280 Mass. 503, 505, and cases cited. *Neiss* v. *Burwen,* 287 Mass. 82, 89. In the instant case, however, we think that it could not have been ruled properly that the plaintiff had failed to sustain that burden, and that this issue was properly left to the jury. We are also of opinion that the question of the defendant's negligence was properly submitted to the jury. Facts that they could have found in this connection have already been set forth. The jury could have found that on the preceding Saturday, when the plaintiff was employed for the day by the defendant, there were no nails in the table, that the type of nail that caused the accident was that commonly used in nailing the plywood to the table to reduce the slot, that that board

was not on the table, and that at some time in the week preceding the accident, "just a week before," the defendant and his son "took out the nails and fixed the block." These facts would warrant the jury in drawing the inference that this work by the defendant was done negligently and in finding that this negligence bore a causal relation to the plaintiff's injuries. The defendant's motion for a directed verdict in his favor was denied properly.

*Exceptions overruled.*