Opinion by
 

 Hirt, J.,
 

 These defendants, sailors in the United States Navy, were charged in the separate counts of one indictment with five offenses, referred to thus in the charge of the trial judge: “Number 1: Assault, being armed with an offensive weapon with intent to rob; Number 2: Assault, together with other persons, with intent to rob; Number 3: Bobbery, being armed with an offensive weapon; Number 4: Bobbery, together with other persons; Number 5: Bobbery, and at the commission thereof beating, striking and ill-using”. The five counts of the indictment, in different language charged a single offense al: leged to have been committed on January 30, 1950, on Eighteenth Street near Market Street in down-town Philadelphia. The trial judge withdrew counts one and three from the jury, because there was no evidence that defendants used an offensive weapon. The jury convicted both defendants on the remaining three counts of the indictment. Although first offenders, and minors, they
 
 *588
 
 were sentenced to from five to twenty years in the Eastern State Penitentiary.
 

 The testimony of the prosecutor is that he met the defendants in a tap room on Market Street near Sixteenth Street in Philadelphia, referred to as The Spigot about 9:80 on the evening in question and spent some time with them there, drinking beer. They all left together about 10:30 intending to go to another saloon. The testimony of the prosecutor is that as they Avere walking along Eighteenth Street at a point about 100 feet north of Market Street the defendants assaulted him and robbed him of a pen and pencil, a twenty dollar bill and some small change. Like money was found on the person of one of the defendants and the pen and pencil were found under the seat of the police car in which they were placed Avith the prosecutor after arrest.
 

 There is no merit in defendants’ contention that the trial judge erred in failing to charge on circumstantial evidence. But there Avas reversible error in the failure to define the offenses charged in the indictment. The trial judge made no reference to the charges except to name them, in the language we have quoted above, and to withdraw two of them from the jury. The multiplication of charges in this case, without apparent reason, must have had some effect on the jury prejudicial to the defendants, under the circumstances. But cf.
 
 Commonwealth ex rel. Spencer v. Ashe,
 
 364 Pa. 442, 71 A. 2d 799. The defendants committed but one offense, on the theory of the prosecution, and a single charge of robbery would have adequately protected the interests of the Commonwealth. The offenses named in the indictment Avere most serious and the failure of the trial judge to define them and to relate them to the single crime of robbery disclosed by the Commomvealth’s proofs, Avas fundamental error. Bobbery itself is a term popularly used loosely, to connote larceny, larceny in the perpetration of burglary, larceny from the person, as Avell as other offenses which are not
 
 *589
 
 robbery at all. Even the legislature in §706 of The Penal Code of June 24, 1939, P. L. 872, 18 PS §4706 gives the name “Robbery of Bank Vaults” to the crime defined in that section of the Act. The jury should have been given definite instructions as to the essentials of robbery in this case. In
 
 Commonwealth v. Tracey,
 
 137 Pa. Superior Ct. 221, 8 A. 2d 622, the applicable law is discussed at length. And we have given notice that we intend to adhere to the rule that, as to serious crimes, it is a fundamental duty of the trial judge to give full and explicit instructions as to the nature of the charges.
 
 Commonwealth v. Franklin,
 
 160 Pa. Superior Ct. 484, 52 A. 2d 230. It was argued that this jury had listened to instructions in other cases during the week of their service and must have appreciated the significance of the crimes charged in this indictment. This was the “first jury trial” for this jury as stated by the trial judge in his charge. And in any view we may not assume that the jury understood clearly the exact issues involved.
 

 The defendants testified to acts of the prosecutor in the tap room which they interpreted as homosexual advances. They said that he threatened to “get even” with them for repelling him. In rebuttal the Commonwealth offered evidence of good moral character of the prosecutor, in the testimony of a witness who was acquainted with his general reputation. Admission of this testimony over defendants’ objection is one of the questions of law raised by appellants. Since these cases must be retried Ave will state our views as to the admissibility of testimony of this class.
 

 Ordinarily in the prosecution of defendants on criminal charges, evidence of good reputation of third persons is inadmissible. It is our view however that the circumstances here give sanction to evidence of the prosecutor’s good reputation under an exception to the rule. The aspersions, unanswered, would have besmirched the
 
 *590
 
 character of the prosecutor and this is reason enough for the admission of evidence to rebut the charges. See 20 Am. Jur., Evidence, §§304, 324; 16 C. J. 586, §1130; 22 C. J. S. Criminal Law, 1083, §680. A similar exception to the general rule was recognized in
 
 Commonwealth v.
 
 Prophet, 307 Pa. 122, 160 A. 597. In that case the character of the murdered man had been attacked by the assertion he was a pervert. In approving the admission of evidence of his good moral character, the Supreme Court there said: “Ordinarily, the character of the deceased is not in issue, and is normally brought into the case only when there is a plea of self-defense, and then under well defined limitations, but as defendant, for the purpose we stated above, pictured Prophet to be a moral degenerate, it was proper for the State to show the good character of the man who was killed”.
 

 Judgments reversed with venire facias de novo.