Victor Salgado SALGADO, Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

No. 5576.

United States Court of Appeals First Circuit.

May 27, 1960.

During his opening to the jury counsel for defendant stated that he would introduce evidence to show that the principal prosecution witness, a government undercover agent, had made a homosexual attempt upon the defendant, and had had homosexual relations with certain other persons.[1] The government objected, and the court stated, in the presence of the jury, that evidence of specific homosexual acts with third parties would not be admissible, but that evidence of the witness's reputation in that regard could be presented. Thereafter defendant testified to such an approach having been made to him by the witness, and of a threat by the witness upon its repulse. This testimony was properly admitted in order to show the witness's bias and prejudice. Later the court, at a bench conference, correctly reaffirmed its ruling that evidence of specific acts with others was inadmissible, see, e. g., McKune v. United States, 9 Cir., 1924, 296 F. 480; 3 Wigmore, Evidence §§ 979, 981 (3d ed. 1940), but reversed its ruling as to proffered evidence of the witness's reputation as a homosexual, on the ground that it was a collateral matter.

■ It is true that such character evidence is not relevant to the question of the witness's veracity, and is therefore not admissible to discredit him in that regard. See 3 id. §§ 922–23. Nor could defendant introduce the evidence merely as contradiction of the witness's own denial that he was "an immoral pervert." But at issue here were questions of bias and prejudice, as had already been brought out, which are basic, and not collateral matters. Such matters can be proved by extrinsic evidence, and this evidence is not foreclosed by a prior denial on the part of the witness whom it is sought so to impeach. See 3 id. §§ 1003, 1005. The proffered character evidence was to some degree corroborative of the defendant's account of the witness's conduct, cf. Clement v. Kimball. 1868, 98 Mass. 535, 537, which otherwise

Gerado Ortiz del Rivero, San Juan, P. R., with whom Santos P. Amadeo and Rafael Franco Garcia, San Juan, P. R., were on brief, for appellant.

Raymond L. Acosta, Asst. U. S. Atty., San Juan, P. R., with whom Francisco A. Gil, Jr., U. S. Atty., San Juan, P. R., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

Defendant was found guilty by a jury and sentenced on a five-count indictment, under 26 U.S.C. §§ 4742(a), 7237(b) and 7701(c), charging him with the illegal transfer of marihuana. He appeals, urging a number of errors occurring in the course of trial. Only three deserve our consideration.

1. During the government's case this witness had been cross-examined by defend-
ant on these matters and had denied them.

stood unsupported, and was at least admissible in the court's discretion for that special purpose. Cf. Commonwealth v. Weatherwax, 1950, 166 Pa.Super. 586, 73 A.2d 427; see Uniform Rules of Evidence, Rule 47 (1953). Although the relevancy in the present case may be somewhat less direct, the situation is analogous to that in a rape case in which evidence is admitted as to the complainant's character for unchastity as bearing on the issue of her lack of consent. See 1 Wigmore, Evidence § 62; cf. 3 id. § 924a. Here, also, there was a tendency to show that the witness would do what the defendant claimed he did. Nonetheless, the evidence was somewhat remote. We believe that such matters should generally be left to the discretion of the trial court. But here, because of what occurred during the opening, we feel this discretion should have been exercised in the defendant's favor. The exclusion of the testimony by a ruling made in the absence of the jury after the defendant had told the jury, with the court's endorsement, that such evidence would be forthcoming, left him not only without the evidence, but with an affirmative inference in the jury's mind that there was in fact no such evidence to present. Under these circumstances it would seem particularly likely for the jury to reject defendant's account of the witness's conduct, which, in turn, would result not only in the rejection of the claim of bias, but also in a general reflection upon defendant's veracity. This latter would be prejudicial not only in those counts in which this particular witness was concerned, but also as to the single count in which he did not figure.

Another government witness was one Calder, the supervisor of the undercover agents, and the necessary link between them and the chemist who analyzed the cigarettes allegedly purchased from the defendant. On cross-examination the defendant asked Calder whether he had gone to the house of one "Pildorita" shortly before trial. On the government's objection the court excluded this as improper cross-examination. For some reason it did not even permit defendant to explain why he asked the question, and forbad his making an offer of proof. It now seems clear that the defendant was seeking to cross-examine on bias, or, to be more specific, on what Wigmore calls "corruption." 3 id., §§ 956, 960. For thereafter counsel stated to the court that he would bring a witness "who will testify that two Internal Revenue agents coerced him to testify against the defendant * * *. We were laying a foundation to impeach Calder." The defendant then offered to show through Pildorita himself that Calder had come to his house and had attempted to persuade him to testify against the defendant.[2] The court excluded this on the ground that Pildorita had not been called as a government witness, and so could not be impeached. It is quite true that Pildorita could not be impeached, for the reason given, but the natural effect of this testimony would have been to impeach Calder, who had testified as a government witness. This was clearly appropriate.[3] See Commonwealth v. Min Sing, 1909, 202 Mass. 121, 128, 88 N.E. 918.

◼ A defendant has two ways to combat a case: to contradict the govern-

2. It may be observed that strictly defendant did not offer to show that Calder sought to have Pildorita testify *falsely* against him, but only used the word "against." However, the record is clear that the word "against," as used, connoted falsity, and was so understood, both by the court and by government counsel.

3. The record suggests that defendant's counsel was partially to blame for the misconception in the court's mind. But an examination of the entire transcript discloses that the United States Attorney and the court were also at fault, and we feel that defendant made his position sufficiently clear to preserve his rights. We note that immediately preceding one of the offers of proof in regard to this particular matter, the court cut off counsel in the middle of an offer on another matter with the remark, "You don't need to explain your theory. You make an offer of proof." We do not criticize a trial judge for this, but when he does he "takes his chances."

ment witnesses, and to impeach them. We believe defendant's efforts with regard to the latter were unduly curtailed, and that for this reason he should have a new trial.

Defendant's other points are not well taken. We will comment briefly on his objection to the government evidence in rebuttal. Defendant offered evidence of reputation for good moral character as part of his defense. This was appropriate, but it opened the door to the government. On rebuttal it introduced evidence of defendant's poor reputation, while living in New York City, with respect to the drug traffic and procuring. The defendant objected that only general evidence of reputation for general bad character was admissible, and not reputation as to any specific trait or course of conduct. We think defendant misapprehends the issue. The purpose of allowing evidence of good character is its relevancy in suggesting that the defendant would not commit the crime for which he is charged. Evidence of character which would create the opposite impression thereupon becomes admissible. The kind of character which may be shown calls for a matter of judgment as to its relevancy. We may assume that a defendant charged, say, with rape, and offering evidence of good character, could not be met with evidence of a reputation for passing worthless paper. See 1 Wigmore, Evidence § 59, and cases therein noted. The admissibility of the drug-traffic reputation in the case at bar, however, is obvious. We can not say that the relationship between selling marihuana and procuring is so remote that the court abused its discretion.

Judgment will enter vacating the judgment of the District Court, setting aside the verdict and remanding the case for a new trial.

WOODBURY, Chief Judge (dissenting).

It seems to me that the errors now asserted on behalf of the defendant could readily have been cured at the trial had his counsel embraced his clear opportunity seasonably to make known to the court the action which he desired the court to take or his objection to the action of the court and the grounds therefor as required by Criminal Rule 51, 18 U.S.C. To be sure Criminal Rule 52(b), restatin preexisting law, authorizes appellate courts to notice plain errors or defects affecting substantial rights even though not brought to the attention of the court. The errors or defects here complained of, if plain, do not impress me as substantial within the meaning of the Rule. I agree with the statement in United States v. Sansone, 2 Cir., 1956, 231 F.2d 887, 891, certiorari denied 1956, 351 U.S. 987, 76 S.Ct. 1055, 100 L.Ed. 1500, that our discretionary power to notice errors not brought to the attention of the trial court should "not be exercised to reverse a conviction based on ample evidence unless the errors have seriously prejudiced the defendant or affected the fairness, integrity, or public reputation of judicial proceedings." I would affirm.