**Amos S. TINKER, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 21726.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 20, 1968.

Decided March 3, 1969.

Petition for Rehearing Denied
April 11, 1969.

Certiorari Denied Oct. 13, 1969.

See 90 S.Ct. 141.

Mr. John A. Shorter, Jr., Washington, D. C., for appellant.

Mr. Sandor Frankel, Asst. U. S. Atty., of the bar of the United States District Court for the District of Columbia, pro hac vice, by special leave of court, with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee. Mr. William M. Cohen, Asst. U. S. Atty., also entered an appearance for appellee.

Before McGowan, Tamm and Robinson, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Under review in this case is a record featuring an undercover police officer and the chief defense witness as the principal figures other than appellant himself. The latter has been convicted of four violations of the federal narcotic laws [1] stemming from two transactions in each of which, so a jury found, he sold capsules containing a narcotic drug to

---

1. 26 U.S.C. §§ 4704(a), 4705(a) (1964).

the officer and the witness, who allegedly was then a special employee of the police department.[2] Appellant's single contention is that the trial judge erred in excluding testimony by the witness tendered to show that the officer had participated in homosexual acts with him. Our examination of this ruling in its full context leads us to conclude that the judge remained well within legitimate bounds, and that the conviction must accordingly be affirmed.

At the trial, the officer testified that the witness introduced him to appellant who, on the two occasions specified in the indictment, sold them capsules which, by uncontradicted expert testimony, yielded their narcotic content on chemical analysis.[3] The defense protested that the officer's version was wholly a contrivance to cover his "partying and 'gay' life" in neglect of police business and to falsely "show that he was doing something constructive."[4] Counsel for appellant first pursued this thesis, albeit unsuccessfully, by cross-examination of the officer as to his relationship with the witness and others.[5] He was then permitted to introduce extensive testimony by the witness that the officer, in contravention of official instructions, had regularly bought marijuana and liquor for private parties, smoked marijuana and used cocaine, and consorted with women. The trial judge, however, refused to allow the witness to testify that the officer had, allegedly twice, engaged in deviate sexual activity with him.[6]

Recognizing its irrelevance to the substantive issues and disavowing any at-

2. See note 3, *infra*.

3. Both appellant and the witness denied the transactions. The witness also denied that he had served as a special employee for the police. The Government's claim in the latter regard was bolstered by rebuttal testimony that the witness had reported threats by appellant designed to induce him to perjure.

4. The officer denied participation in any such activity. See also note 5, *infra*.

5. Q. Were you ever present with [the witness] and some of his friends when they engaged in any deviate sexual activity, sir?
A. No.
Q. At no time?
A. At no time.
Q. I take it from what you have said that you never participated in any.
A. I did not.
Q. How about smoking marijuana? Did you ever smoke any marijuana to pass this appearance of yours?
A. No.
Q. Did you ever pretend to smoke marijuana in their presence, sir?
A. Yes.
Q. How many times?
A. Maybe half a dozen.
* * * * *
Q. Now, while you were working in an undercover capacity did there ever come a time that drugs were bought by you or with government funds, sir, that you did not or were not turned over to [the officer's superior]?
A. No, sir.
* * * * *
Q. You never bought [the witness] any narcotics?
A. No, sir.
Q. To your knowledge was [the witness] a drug user, sir?
A. To my knowledge, he was not.
Q. And he never used any drugs in your presence?
A. No, sir.
* * * * *
Q. Ever been in [the witness'] bed?
A. No.
Q. Ever been in any bed in that house?
A. No.

6. Counsel's specific proffer was:

The testimony will show, Your Honor, that there were several occasions, at least two that have been related to me, in which [the officer] was in the home of [the witness], his living room, and they had an unnatural sex relation, these two men, and that this happened again, Your Honor, on one other occasion that I have been told about, at [the witness'] house, at his apartment.

tempt at character impeachment,[7] appellant's counsel urged at trial that the proffered testimony indicated, consonantly with the overall defensive theory, a reason for the officer to fabricate a case against appellant. The sole issue thus framed for our decision is whether that testimony was admissible in support of appellant's effort to show that the officer was so motivated.

 It is always open to a party to undertake a demonstration of the bias [8] or testimonial motivation—a form of bias [9]—of one who testifies for his adversary. "Such an effort," we have said, "may properly solicit over a wide range any information of potential value to the trier of fact in the assessment of credibility." [10] Evidence of homosexuality is no exception, and in appropriate circumstances it may readily be admitted for that purpose.[11] But, as ever so recently we were careful to point out, "[o]nce a reasonable opportunity to prove bias has been afforded a party, the trial judge has the discretion to control the extent of the proof." [12]

 Appellant's position is not that the alleged homosexual acts alone but that the entire course of misconduct attributed to the officer, of which those acts were but a small part, induced him to invent a tale of narcotic violations by appellant. And the trial judge, after carefully weighing the matter upon full argument of counsel, let the witness narrate in elaborate detail the "partying and 'gay' life" which appellant deemed vital to his contention that the officer had a motive to lie. Even if there were no more to the matter, we could not say that the judge abused his discretion in disallowing testimony that would have added only about two specific episodes to an already lengthy chronical of official misbehavior.

 But there is more—indeed, much more. Evidence of homosexuality has an enormous proclivity for humiliation and degradation of a participant in a fashion completely unrelated to testimonial honesty.[13] The record before us makes evident the trial judge's concern that the witness' claim that the officer had engaged in homosexual conduct would unfairly debase him in the eyes of

---

7. *See* Salgado v. United States, 278 F.2d 830, 831 (1st Cir. 1950) ("It is true that such character evidence is not relevant to the question of the witness's veracity, and is therefore not admissible to discredit him in that regard. Nor could defendant introduce the evidence merely as contradiction of the witness's own denial that he was 'an immoral pervert.'" [citations omitted]); United States v. Nuccio, 2 Cir., 373 F.2d 168, 171, cert. denied 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 623 (1967) (" * * * it would indeed have been wrong to permit cross-examination on the score of homosexuality merely to discredit [a witness'] character * * *.")

8. Wynn v. United States, 130 U.S.App. D.C. 60, 62–63, 397 F.2d 621, 623, 624 (1967); Villaroman v. United States, 87 U.S.App.D.C. 240, 241, 184 F.2d 261, 262, 21 A.L.R.2d 1074 (1950).

9. Villaroman v. United States, *supra* note 8, 87 U.S.App.D.C. at 241, 184 F.2d at 262; McFarland v. United States, 85 U.S.App.D.C. 19, 21 n. 3, 174 F.2d 538, 540 n. 3 (1949).

10. Wynn v. United States, *supra* note 8, 130 U.S.App.D.C. at 62, 397 F.2d at 623. See also Blair v. United States, 130 U.S. App.D.C. 322, 324, 325, 401 F.2d 387, 389–390 (1968); Villaroman v. United States, *supra* note 8, 87 U.S.App.D.C. at 241, 184 F.2d at 263.

11. See Salgado v. United States, *supra* note 7, 278 F.2d at 831–832; United States v. Nuccio, *supra* note 7, 373 F.2d at 171.

12. Blair v. United States, *supra* note 10, 130 U.S.App.D.C. at 324, 325, 401 F.2d at 389–390. See also Wynn v. United States, *supra* note 8, 130 U.S.App.D.C. at 62, 397 F.2d at 623; Williams v. United States, 117 U.S.App.D.C. 206, 207, 328 F.2d 178, 179 (1963); 3 J. Wigmore, Evidence § 951 at 509 (3rd ed. 1940); C. McCormick, Evidence § 40 at 85 (1954).

13. United States v. Provoo, 215 F.2d 531, 534 (2d Cir. 1954). See also the cases cited *infra* note 15.

the jury.[14] Even where testimony of that sort has some tendency to connote motivation, any exercise of judicial discretion worthy of the name necessitates consideration of these adverse effects.[15] Here the proffered evidentiary items could have legitimately added little to appellant's substantial presentation while their illegitimate propensities loomed large. On balance, and indulging the leeway that all discretionary rulings command, we hold that the trial judge did not err in excluding them.[16]

Affirmed.

14. At one point during the trial, even appellant's counsel argued that by means of the excluded testimony "I can show that this man [the officer] is generally depraved. * * * "

15. United States v. Nuccio, *supra* note 7, 373 F.2d at 171. See also Blair v. United States, *supra* note 10, 130 U.S. App.D.C. at 325, 401 F.2d at 390.

16. We note that on cross-examination the officer denied that he had ever shared a bed with the witness. See note 5, supra. Presumably the witness, if permitted to testify, would have contradicted that statement, but this circumstance did not qualify the disputed testimony for admission. As we have had occasion to state, "generally the inquiring party is concluded by the witness' answer when cross-examination relates to a matter collateral to the issues, and he may not later rebut it for purposes of impeachment." Ewing v. United States, 77 U.S.

App.D.C. 14, 21, 135 F.2d 633, 640, cert. denied 318 U.S. 776, 63 S.Ct. 829, 87 L.Ed. 1145 (1941). See also Lee v. United States, 125 U.S.App.D.C. 126, 129, 368 F.2d 834, 837 (1966); 3 J. Wigmore, Evidence §§ 1000–1003 (3d ed. 1940). And the term "collateral," we said, "can mean no more than the matter inquired about is not logically relevant, independently of 'pure' impeachment, to the issues or cause on trial or is so only in so remote and indirect a manner that the authoritative tribunal thinks it should not be inquired into in a case of contradiction by extrinsic testimony or, in one of self-contradiction, further than to make inquiry of the witness." Ewing v. United States, *supra*, 77 U.S.App. D.C. at 21, 135 F.2d at 640. We have no difficulty in concluding that the answer appellant elicited from the officer was of that character, precluding appellant from attempting contradiction by extrinsic testimony.