HERBERT STRADER

*v.*

STATE OF TENNESSEE.

(*Knoxville,* September Term, 1960.)

Opinion filed March 10, 1961.

W. E. Badgett, Knoxville, for plaintiff in error.

Thomas E. Fox, Assistant Attorney General, for the State.

Mr Justice Felts delivered the opinion of the Court.

Defendant below was convicted of a felonious assault and battery upon a female under 12 years of age with intent to unlawfully carnally know her (T.C.A. sec. 39-606) and sentenced to 20 years in the penitentiary and rendered infamous.

He appealed in error and has assigned for errors, among others, that the evidence preponderates against the verdict and in favor of his innocence, and that the Trial Judge arbitrarily refused to permit him to put on witnesses to his good character.

As we view the case, we need consider only the assignment complaining of the exclusion of the evidence as to defendant's good character; and, therefore, we shall not discuss the facts further than to show the importance and effect of the ruling complained of by this assignment.

Defendant was a man 40 years of age. He was born and reared in Knoxville, finished high school there, and had a year and a quarter at Lincoln Memorial University. He lived in Knoxville all his life until 1955. He then worked at Bristol, Tennessee, and later at Dayton, Ohio, until February 1960, when he returned to Knoxville to take care of his invalid father, whose house was only two doors from the house where the girl making this charge lived.

She was 10 years of age, in the fourth grade, made "excellent marks" in school, and was a precocious, "nervous" child. She said the assault occurred April 4, 1960, about 3:45 P.M. in the Strader home. She had got some Coca colas at a nearby store, as requested by defendant, and brought them in the front door into the living room, where the elder Strader was sitting in a wheelchair. Defendant took the Coca colas to the kitchen, gave her some Hershey candy bars that were lying there, she took them, and left by the front door.

She said that while she was in the Strader home, standing in the hallway, defendant motioned her into the adjoining bedroom, lifted up her skirt, pulled down her

pants, felt of her privates with his hand, and exposed himself. She did not, however, say he tried to penetrate her or ever touched her with his penis.

Soon after she said the offense took place, she told her mother and grandmother about it. They had her examined by a physician. There were no marks of violence on her body or on her clothes; and the doctor's examination showed "no evidence of physical contact — she hadn't been harmed." Thus, the charge rested upon her word and that of her mother and grandmother as to what she told them and of her father as to what they told him.

At the time of the alleged offense two other persons were in the Strader home: the invalid father, who was apparently unable to testify; and Mrs. Gladys Strader, the wife of a cousin of defendant. Defendant testified that he was shaving and washing his father at the time, and that he never said anything improper to the little girl, and "I never touched the child."

And he was corroborated to some extent by the witness Gladys Strader who said she was helping to do the housework, going from the hall into the bedrooms, heard the child enter, and a little later leave, by the front door, saying: "Oh, thank you for the candy"; and that the witness neither saw nor heard defendant say or do anything improper.

Thus, when defendant, on trial for his life, became a witness in his own behalf, he was entitled to put on evidence of his good character for two purposes: (1) to strengthen the presumption of his innocence, "to make it improbable" that he "would be guilty of the crime charged"; and (2) to enhance his credibility as a witness; and he was entitled to have the jury instructed that proof

of his good character stood as "a witness in his behalf." *Lea v. State,* 94 Tenn. 495, 29 S.W. 900; *Moore v. State,* 96 Tenn. 209, 33 S.W. 1046; *Tucker v. State,* 149 Tenn. 98, 257 S.W. 850.

When he started to introduce witnesses as to his good character, however, the Trial Judge, on objection of the district attorney general, excluded such evidence because defendant had been away from Knoxville five years, and "what his character was five years ago is wholly immaterial." Defendant's first character witness was Mrs. Pierce, and near the beginning of her examination, this occurred:

"Q. Do you know him [defendant] quite well? A. Yes.

"General Carlington: I object to this.

"The Court: Let the jury go with the officer a minute or two.

Thereupon, the jury retired from open court.

"The Court: Mr. Morrell, this is a fine lady but under this objection, under the defendant's testimony, he has been away from here for five years. Just come back here in February. From February to April is only two months. What his character was five years ago is wholly immaterial. * *"

The bill of exceptions further shows that when the jury returned into court, the Trial Judge explained to them that he had excluded the proffered testimony as to defendant's good character because defendant had been away from Knoxville for the last five years. In this connection, the Court said:

"The Court: The proof is from the defendant himself the last five years he has been residing in Dayton, Ohio, and in here occasionally. A person can only testify to a character in this community, and according to his own testimony he has been away for five years, and she cannot qualify. I assume you have others?

"Mr. Morrell: Yes. I would like to call their names for the record."

█ Thereupon, the names of other character witnesses were called and their testimony excluded. It is true the excluded testimony was not put in the bill of exceptions, and the general rule is that error cannot be assigned upon the exclusion of evidence unless the bill of exceptions shows what the witness' answers would have been if permitted, and shows they would have been competent and material.

But this rule does not apply where the Trial Judge "rules out an entire line of competent evidence, or refuses to hear any examination thereon," or when he holds a witness incompetent, "and refuses to hear him at all." *City of Nashville v. Drake*, 199 Tenn. 1, 7, 281 S.W.2d 681, 683.

So, we must assume that these character witnesses would have testified that they knew defendant's general character or reputation and that it was good. The Trial Judge excluded their testimony and held defendant was not entitled to prove his good character in the community where he was accused and was being tried, because he had been away five years and *"what his character was five years ago was wholly immaterial."*

As stated, defendant had lived in that community all his life until he was 35 years of age. Assuming, as we must for the purpose of this case, that he lived a blameless life and established a good character there for 35 years, is he now to be denied the benefits of it merely because he sojourned a few years elsewhere? Or is his prior good character now "wholly immaterial?"

We do not think so. Good character is a flower of the slow growth of years and does not change overnight. "The natural and reasonable inference is that a man will generally act in accordance with his character. It is *the law of his life*" (italics ours). *Keith v. State,* 127 Tenn. 40, 44, 152 S.W. 1029, 1030.

It is true that the good character of the defendant which is relevant is that which existed just prior to the alleged offense and up to the time he testified; but that may properly be evidenced by proof of his prior good character. In *Fry v. State,* 96 Tenn. 467, 470, 35 S.W. 883, 884, it was said:

" 'The principle that the existence of a state of things once established by proof is presumed to continue the same until the contrary is shown, is applicable, within reasonable limits, to the character of a witness proved to have once sustained a bad reputation for truth and veracity' * * * The same principle is, of course, applicable, where the evidence is in support of the good character of the defendant."

While testimony as to character and reputation should be limited to a period reasonably close to the time involved, remoteness, if not too great, goes to the weight, rather than to the admissibility, of the evidence. Much is necessarily left to the discretion of the Trial Judge, but

such discretion will be reviewed and, in case of an abuse, will be reversed. 32 C.J.S. Evidence sec. 434b; *Fry v. State,* supra.

In *Fry v. State,* defendant had lived "six years" in the county when he was brought to trial. Before that, he had lived in Wisconsin. He put on local witnesses as to his good character during these six years, and offered depositions of witnesses who had known him in Wisconsin prior thereto. The Trial Judge excluded these depositions because they related to defendant's character *"six or seven years before the time"* he testified.

This was held an abuse of discretion for which a reversal was ordered. That is, proof of character six years before the alleged offense was not too remote, and defendant had a right to put on proof of his good character during that remote period, as well as the later period. The Court said:

"The defendant was before the court not merely as a witness, but as the accused, and proof of character was important, not only to illustrate his credibility as a witness, but as a fact to be considered on the question of his guilt or innocence. The defendant, it is true, had lived in this community for six years; but, by reason of his longer residence in another state, he had established a character there which he was entitled to prove in connection with the proof of his character in this state, as tending to show the improbability of his guilt. In our opinion, the depositions of the Wisconsin witnesses should have been admitted, and for this error the case is reversed, and remanded for a new trial."

It is true that *Fry v. State* was decided before our Act of 1911 (T.C.A. sec. 27-117), known as our Harmless Er-

ror Statute, which forbids us to reverse for any error unless it affirmatively appears to have affected the result.

We think, however, the Trial Judge's action in refusing to permit the jury to hear defendant's character witnesses, and in thus depriving him of the benefit of proof of good character "as a witness in his behalf", was a denial of defendant's right to a fair trial, and did prejudicially affect the result.

There area number of cases, decided since the Harmless Error Statute, in which this Court felt bound to reverse for erroneous admissions or exclusions of evidence; and we think the showing of prejudice here is equally as clear, or even clearer, than in those cases. *Frank v. Wright,* 1917, 140 Tenn. 535, 546-548, 205 S.W. 434; *Tucker v. State,* supra, 149 Tenn. 123-125, 257 S.W. 850; *Tennessee Odin Ins. Co. v. Dickey,* 190 Tenn. 96, 228 S.W. 2d 73, 18 A.L.R.2d 1284; *Fortune v. State,* 197 Tenn. 691, 277 S.W.2d 381.

For these reasons, the judgment of the Trial Court is reversed and the case is remanded for a new trial.

Reversed and remanded.