UDEAN PAYNE, Plaintiff in Error

*v.*

STATE OF TENNESSEE, Defendant in Error.

379 S.W.2d 759

(*Knoxville,* September Term, 1963.)

Opinion filed June 4, 1964.

JACK R. MUSICK, STREET, BANKS, MERRYMAN & MUSICK, Elizabethton, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, WALKER T. TIPTON, Assistant Attorney General, for defendant in error.

Mr. Justice White delivered the opinion of the Court.

The plaintiff in error, defendant below, was indicted, tried and convicted of an assault with intent to commit murder in the second degree upon the person of Arthur Stansberry, and the jury fixed his punishment at five years confinement in the State Penitentiary. The court entered a correct judgment sentencing him to serve not less than one nor more than five years in the State Penitentiary.

His motion for a new trial was seasonably made and overruled by the trial judge. From this final order an appeal was granted to this Court and has been perfected.

There are several assignments here but we need only to consider the second assignment, which we think is good and upon which this case should be reversed and remanded for a new trial. Said assignment is, in substance, that the court erred in refusing to permit the defendant, through counsel, to cross-examine a rebuttal witness who testified that he would not believe one John Brock, a witness for the defendant, upon oath with reference to his source of knowledge and information upon which he based such conclusion.

In order to dispose of this assignment of error we think it necessary to note the facts only briefly.

During the evening of July 19, 1963, Arthur Stansberry was assaulted by someone at his home in the Buntontown Community of Johnson County. Mr. Stansberry was 81 years of age at the time and lived by himself on a farm.

He testified that the defendant, Udean Payne, committed the assault upon him. Payne is a young man about 21 years of age. He lives with his father and mother in the Buntontown Community, about a mile from the home of Mr. Stansberry.

The defendant denied the charge lodged against him and undertook to establish an alibi. He testified that he was at the home of his father and mother watching television during the whole of the afternoon and evening of July 19, 1963. His father and mother corroborated his testimony in every detail in regard to this particular phase.

The witness, John Brock, a friend of the Payne family and a neighbor, testified that he was in the Payne home on the evening of July 19, 1963 watching television. He testified positively that the defendant was present in his father's home during the entire evening. If the jury had believed this testimony it could not have convicted the defendant.

Therefore, the credibility of this particular witness, John Brock, was crucial because he, unlike the father and the mother, was a disinterested witness.

The State, on rebuttal, introduced a Tennessee Highway Patrolman, Trooper Gregg, who testified that he lived in the Buntontown Community; that he knew the

witness John Brock; that he knew his general reputation in the community; and based upon his general reputation he was not entitled to full faith and credit under oath as a witness.

On cross-examination he was asked whether his conclusion was based upon what he knew about this man or what he had heard about him. Specifically he said that his answer was based upon "what I know and what I have heard". He was then asked:

"Q. Who have you heard discuss him?

"A. Well, that might get somebody else involved, and in trouble, and I'll not answer that."

The court turned down the appeal of defendant's counsel that the witness be required to answer further. An exception was made to the ruling of the court and upon the motion for a new trial the action of the court was assigned as error.

Admittedly, there is no decision in this State exactly in point, but the Stand contends even if this be considered error it was harmless because the answers of this witness were not present in the bill of exceptions. Under such circumstances it is contended by the State counsel should have preserved the offered testimony in the bill of exceptions, unless prohibited from doing so, so that this Court might judge what effect its absence had upon the ultimate outcome of the lawsuit.

We cannot see the logic of this argument since the witness refused to answer and the trial judge sustained him in such refusal. Under these circumstances it would be most difficult, if not impossible, to preserve the answer. See *Strader v. State,* 208 Tenn. 192, 197, 344 S.W.2d 546 (1961).

In *Davis v. State,* 186 Tenn. 545, 212 S.W.2d 374 (1948), it was said:

"We cannot agree to the insistence made by the State that the refusal of the trial judge to permit cross-examination of the witness Donald Davis by counsel for defendant was harmless error and falls under Section 10654 of Williams' Code. The right to cross-examine a witness is fundamental. Of course, it was to the interest of defendant to show that Edward Shipley was at fault. While cross-examination of a witness is controlled by the trial judge and his discretion will not ordinarily be disturbed, but where a witness has testified to material matters on his direct examination, the right to cross-examine cannot be denied. *York v. United States,* 6 Cir., 1924, 299 F. 778. We think such a refusal constitutes reversible error."

■ We think the ruling of the trial judge in regard to the refusal of the witness Gregg to answer the question about the source of his information upon which he based his opinion that the witness Brock was not entitled to be believed on oath in a court of justice was prejudicial error because the jury treated the testimony of Brock as being impeached. Otherwise, it would not have convicted the defendant. In other words, the jury believed the witness Brock was not telling the truth and, no doubt the testimony of the witness Gregg that he would not believe Brock on oath greatly influenced the jury.

■ In 98 C.J.S. Witnesses sec. 525, at page 453, on the general subject of cross-examination of witnesses, it is said:

"An impeaching witness may be cross-examined as to his means of knowledge, the extent of his knowledge,

and the grounds of his opinion, a liberal cross-examination as to means of knowledge being permitted. On cross-examination of an impeaching witness it is ordinarily held proper to bring out particular facts or transactions affecting the reputation of the witness under attack, or to permit the impeaching witness to testify as to statements of single individuals, such line of cross-examination being permissible to test the accuracy or knowledge of the impeaching witness, or to contradict him, or to attack his estimate of character, or to bring out all the facts respecting an inquiry begun on direct examination.''

This question is also discussed rather fully in IV Wigmore, Evidence, Section 1111 (1940). Wigmore sustains fully the above statement from C.J.S., supra, setting out the reasoning in several old English cases for such holding.

The general principle supporting such ruling is that every witness may be discredited by exhibiting the inadequacy of the sources of knowledge by cross-examination. If an impeaching witness to another's bad reputation is speaking from a well-founded knowledge of such reputation, he ought to be able to specify some of the rumored misconduct or some of the individual opinions that have gone to form that reputation.

It may be very material and very important to know from whom in particular the reports come. Upon such inquiry, it might develop that the people from whom the witness has heard the rumors are personal enemies so situated in regard to the person being impeached that their reports against him are entitled to no consideration whatsoever. The inquiry may also be proper in order to

test the extent and means of information possessed by the witnesses; by allowing such inquiry it may appear that the imputed bad character is wholly fictitious and concocted for a particular purpose.

"If a witness can shield himself behind an answer so general that, even if false, the person who knows that fact cannot testify with definiteness on the subject, we may well believe that bad men will frequently resort to this species of evidence where the truth will not warrant it. And in nothing may parties be more easily mistaken that in judging of the general reputation of another for truth and veracity. They may either be mistaken in assuming the speech of one or two to be the voice of the community, or they may confound a reputation for untruth; or they may misconstrue reports; or they may honestly be mistaken in regard to their import. Nothing is more common in practice than to see a witness placed upon the stand to impeach the general reputation of another for veracity, when a cross-examination demonstrates that the reports only relate to a failure—probably an honest one—to meet obligations, while the party's real reputation for truth is above suspicion. Nothing short of a cross-examination which compels the impeaching witness to state both the source of the reports and their nature will enable the party either to test the correctness of the impeaching evidence or to protect the witness who is assailed, if he is assailed, unjustly." IV Wigmore, Section 1111, Supra.

3 Wharton's Criminal Evidence, Section 866 is to the same effect:

"A witness called for impeachment may be cross-examined by the adverse party as to the extent of his

knowledge and its sources, before testifying as to the reputation of the witness he is called to impeach. After he has testified to the bad character of the impeached witness for truth, he may be cross-examined as to the sources of his knowledge of the impeached witness.

"The impeaching witness may also be cross-examined as to particular facts to attack his estimate of character, test his accuracy, or contradict him."

For the foregoing reasons the defendant's assignment of error directed to the trial judge's refusal to allow defense counsel to cross-examine the impeaching witness as described above, must be sustained.

In view of our disposition of the case it is not necessary to pass upon the preponderance of the evidence or discuss it in any detail. It is also unnecessary to discuss the defendant's assignment of error directed to the action of the trial judge in refusing to allow defense counsel to cross-examine Mr. Stansberry as to any bad feelings he may have had against the Payne family as a result of boundary line disputes or quarrels with some of them. The trial judge refused to allow this line of cross-examination but permitted the District Attorney General to argue that the defense had shown no motive for Mr. Stansberry making this charge against his neighbor, the defendant, if it were not true. Such refusal and argument may not occur again on the re-trial of this case.

For the foregoing reasons the judgment of the trial court is reversed and this case is remanded for a new trial.

BURNETT, CHIEF JUSTICE, and FELTS, DYER and HOLMES, JUSTICES, concur.