Joe Morrison, Kyle Culberson and Bobby E. Bradley

*v.*

State of Tennessee.

397 S.W.2d 826.

400 S.W.2d 237.

(*Knoxville,* September Term, 1965.)

Opinion filed November 12, 1965.

On Petition to Rehear January 5, 1966.

On Second Petition to Rehear March 9, 1966.

376

Jack E. Vaughan and John Washington, Johnson City, for Joe Morrison.

Preston H. Taylor, Kingsport, for Kyle Culbertson and Bobby E. Bradley.

George F. McCanless, Attorney General, Thomas E. Fox, Assistant Attorney General, for the State.

Mr. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

Plaintiffs in error are Joe Morrison, Kyle Culbertson and Bobby E. Bradley. These three men were jointly indicted on a charge of rape and were tried together in the Criminal Court for the First Judicial Circuit in Jonesboro, Washington County, Tennessee. Defendant Morrison was found guilty as charged and the jury fixed a sentence of ninety-nine (99) years in the State penitentiary. Bradley and Culbertson were convicted by this same jury of aiding and abetting said Morrison to commit the offense of rape. They were each sentenced to ten (10) years in the State penitentiary.

Morrison, alone, and Bradley and Culbertson, jointly, have perfected appeals to this Court, which proposes to dispense with the matters relating to this cause in a two part opinion. The first part of this opinion addresses itself to the grounds for a new trial raised by defendant, Morrison; the second part addresses itself to the grounds for a new trial raised by defendants, Bradley and Culbertson.

Counsel for Joe Morrison have compiled a long list of grounds for a new trial. This Court considers the following grounds of such substance to warrant comment in this opinion; (1) that the evidence preponderates in favor of the innocence of the accused and against his guilt; (2) that the trial court was in error in denying the defendant the right to have and study copies of statements made by his co-defendants prior to trial; (3) that the trial court was in error in not declaring a mistrial after the District Attorney General had made inflammatory statements to the jury in his closing argument; and (4) that the court was in error in allowing the introduction of the picture of Mrs. Ben Calloway over the objection of this defendant because of its inflammatory influence on the jury.

■ The appeal to this Court for reversal on the ground that the evidence preponderates in favor of the innocence of the accused and against his guilt is worthy of little further consideration, this Court having read the record. Mrs. Calloway's testimony affirmatively shows that all the elements of the crime of rape were present. Belief or disbelief of this testimony is clearly a matter for the jury; certainly no authority need be cited for this most fundamental principle of trial practice, but the words of this Court as written by Mr. Justice Tomlinson

in *Hargrove v. State,* 199 Tenn. 25, 28, 281 S.W.2d 692, 694, seem particularly appropriate in this case:

"In considering the assignments of error based upon the testimony, this appellate court must apply the rule that credibility of witnesses and conflicts in testimony have all been settled by the verdict of the jury. This makes unnecessary and, indeed, inappropriate, a detailed discussion of that evidence, pro and con, * * * in stating what we conclude the material facts to be as established by that testimony."

■ We are not persuaded that the verdict was against the clear weight of the evidence.

The second ground for a new trial raised by defendant, Morrison, is that his counsel was not allowed to examine statements made by his two co-defendants prior to the trial of the cause and that his counsel had the right to examine such statements pursuant to T.C.A. 40-2441, which is, as follows:

"40-2441. *Copy of written confession or admission against interest furnished defendant—List of witnesses, if oral.*—Whenever a written or oral confession or admission against interest shall have been made before any law enforcement officer or agency in this state by any person charged with any crime, a copy of such confession, or admission against interest, if written, together with a list of the names and addresses of all persons present at the time such confession or admission against interest was made, shall be given to the defendant or his counsel on demand. If such confession or admission against interest was not reduced to writing, then a list of the names and addresses of all per-

sons present at the time the confession or admission against interest was made shall be furnished.

"No confession or admission against interest shall be admitted as evidence in any case unless a copy of the confession or admission against interest and/or list of names and addresses of persons present at the time the confession was made is furnished as required by this section."

■■ The question before this Court is whether this statute, T.C.A. 40-2441, was intended to apply to oral or written confessions made by persons other than the person who claims the right to examine such statements pursuant to T.C.A. 40-2441. We think this statute was only intended to cover a situation in which the prosecution has in its possession a statement, *made by the person indicted* and was not intended to apply to the statements of other persons. The obvious implication of a fair and natural reading of this statute fully supports our position in holding that this second ground has no merit.

The third contention of the defendant, Morrison, is that the trial judge was in error in not granting him a new trial because the District Attorney General's closing argument was "inflammatory, prejudicial and meant to prejudice Joe Morrison from obtaining a fair and impartial trial."

■ This Court has examined the argument of the District Attorney General, and the evidence presented at the trial, and can come to no other conclusion than that irrespective of *what* the District Attorney General's purpose was in his emotionally charged statement that such statement had no effect on the outcome of the trial. Therefore, even if the argument was improper, it would

not justify reversal, since the situation falls within the scope of the harmless error statute, T.C.A. 27-117. See also *Crowe v. Provost,* 52 Tenn.App. 397, 374 S.W.2d 645.

██ In reply to the charge of error in the admission of the photograph of Mrs. Calloway, it has long been settled that photographs showing the results of a defendant's misconduct are admissible to corroborate the medical testimony. *Hughes v. State,* 126 Tenn. 40, 148 S.W. 543; *Brown v. State,* 186 Tenn. 378, 210 S.W.2d 670; *Bass v. State,* 191 Tenn. 259, 231 S.W.2d 707; and *Kirkendoll v. State,* 198 Tenn. 497, 281 S.W.2d 243. The medical testimony showing the extent of Mrs. Calloway's injuries was corroborated by the picture in question, and thus no new trial will issue on the ground that the picture was improperly admitted into evidence.

The joint appeal of Culbertson and Bradley will be resolved by the disposition of a single question raised in the defendants' assignments of error.

The question arises because the trial court refused to allow defendants, Culbertson and Bradley, to introduce any character evidence since they did not take the stand in their own defense; the trial judge being of the opinion that since their credibility was not in issue by virtue of their not taking the stand, that such character evidence was irrelevant. Counsel for these two defendants excepted to this ruling and used this same ruling as one of their grounds in their motion for a new trial, which the trial judge overruled. Defendants' counsel assign this action as error and as basis for a new trial. The question before this Court is, therefore, was the trial judge in error in refusing to allow this line of character evidence to be introduced? More specifically, was the character

382

evidence offered by the defendants irrelevant since they had not taken the stand to testify?

 More than the mere buttressing of the defendants' credibility as a witness may be proved by character evidence offered by the defendants. In *Fry v. State,* 96 Tenn. 467, 471, 35 S.W. 883, 884, this Court said:

"The defendant was before the court not merely as a witness, but as the accused, and proof of character was important, not *only to illustrate his credibility as a witness, but as a fact to be considered on the question of his guilt or innocence.*" (Emphasis ours.)

In *Strader v. State,* 208 Tenn. 192, 198, 344 S.W.2d 546, 548, 87 A.L.R.2d 963, this Court states the following principle:

"Good character is a flower of the slow growth of years and does not change overnight. 'The natural and reasonable inference is that a man will generally act in accordance with his character. It is the law of his life'. *Keith v. State,* 127 Tenn. 40, 44, 152 S.W. 1029, 1030."

There are several other cases in this State which stand for the proposition that character evidence is admissible by the defendant in a criminal case as relevant to this probability of whether or not he committed the crime in addition to being relevant on the issue of his reputation for truth and veracity. See *Roman v. State* (1875), 1 Tenn.Cas. (Shannon), 470; *Powers v. State,* 117 Tenn. 363, 97 S.W. 815; and *Keith v. State,* supra.

Without quoting all the treatises and encyclopaedic treatments on and of this point, we choose to rely on one of the more representative and authoritative treatises for

textual authority on this subject, Wigmore on Evidence, 3rd Ed., Vol. I, Sec. 55, page 450:

"A *defendant's character*, then, as indicating the probability of his doing or not doing the act charged, *is essentially relevant*. (Emphasis theirs.)

"In point of human nature in daily experience, this is not to be doubted. The character or disposition— i.e. a fixed trait or the sum of traits—of the persons we deal with is in daily life always more or less considered by us in estimating the probability of his future conduct. In point of legal theory and practice, the case is no different. *A defendant is allowed to invoke his own good character to aid in the demonstration of his innocence;* and the prosecution is allowed to use the opposite fact for the opposite purpose. The Courts have made it clear that a defendant's character is regarded as constantly having probative value on that question: (Emphasis ours.)

\* \* \* \* \* \*

"1865, WILLES, J., in R. v. Rowton, Leigh & C. 520, 540; 'It is a mistake to suppose that because the prisoner only can raise the question of character, it is therefore a collateral issue. It is not. Such evidence is admissible because it renders it less probable that what the prosecution has averred is true; it is strictly relevant to the issue.' COCKBURN, C. J.: 'What you want to get at is the tendency and disposition of the man's mind towards committing or abstaining from the class of crime with which he stands charged.'

\* \* \* \* \* \*

"1876, BERRY, J., in State v. Lee, 22 Minn. [407] 409: 'The purpose of the evidence as to the character

of the accused is to show his disposition, and to base thereon a probable presumption that he would not be likely to commit, and therefore did not commit, the crime with which he is charged.' "

In Section 56 of the same authority, Wigmore on Evidence, it is said:

"Character being thus relevant, it follows that *a defendant may offer his good character to evidence the improbability of his doing the act charged,* unless there is some collateral reason for exclusion; and the law recognizes none such." (Emphasis added.)

Footnote 6 under Section 56, above, states, "It is of course not necessary that the accused should have taken the stand: * * *."

See also Underhill's Criminal Evidence, Vol. I, 5th Ed., Section 190, page 413; and Wharton's Criminal Evidence, Vol. I, 12th Ed., Section 221, page 455.

Since the whole line of testimony relating to the character of these defendants is not in the record we must assume that all such evidence would be in their favor, that is to say that their character evidence would make it highly improbable that these defendants would aid and abet a person committing the crime of rape.

██ The excluded testimony was not put in the bill of exceptions, and the general rule is that error cannot be assigned upon the exclusion of evidence unless the bill of exceptions shows what the witnesses' answers would have been if permitted, but this rule does not apply where a trial judge "rules out *an entire line of competent evidence, or refuses to hear an examination thereon*

\* \* \*." *City of Nashville v. Drake,* 199 Tenn. 1, 7, 281 S.W.2d 681, 683; *Strader v. State,* supra.

 Since we assume that these character witnesses would have testified that they knew the defendants' character or reputation and that it was good; we think the trial judge's action in refusing to permit the jury to hear the defendants' character witnesses, and in thus depriving him of good character "as a witness in his behalf," was a denial of the defendants' right to a fair trial, and did prejudicially affect the result. Other evidence that these defendants aided and abetted Joe Morrison in raping Mrs. Calloway is at best meager, and we are of the opinion that had this evidence (character evidence) been admitted, such evidence could have materially affected the verdict of the jury as to Culbertson and Bradley.

We take this opportunity to thank counsel for plaintiff in error, Joe Morrison, Jack E. Vaughan and John Washington for their excellent presentation of the questions involved on this appeal and the excellent brief filed by them in Morrison's behalf.

The trial court is affirmed as to defendant, Joe Morrison; and reversed and remanded as to Culbertson and Bradley.

## On Petition to Rehear

We have had filed with us a courteous petition to rehear on behalf of Joe Morrison. The only question presented by this petition to rehear is that we failed to apply the rules enunciated by the Supreme Court of the United States in *Douglas v. State of Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934, and *Pointer v. State of Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, in support of the contention that Morrison was denied an

opportunity to confront his two co-defendants, who testified against him.

Before we prepared our original opinion herein these cases were considered by us. We did not then, nor do we now, consider that these cases are applicable to the facts in the instant case. The petition contends that Morrison was prejudiced because he was not furnished a copy of the statements made by his two co-defendants orally to the investigating officers. Both of the co-defendants testified herein as witnesses in the trial and were subjected to cross-examination. Thus, as we see it, the questions presented in the cited cases, supra, were fully complied with here. In both of these cases, cited above, there was no adequate opportunity for the cross-examination of witnesses who gave testimony against the defendants. Adequate opportunity for cross-examination of the witnesses, who were co-defendants herein, gave this defendant a full opportunity to determine anything that they knew or had said against co-defendant, Morrison.

These two federal cases do not present a similar problem to the problem presented herein. We have not been apprised of anything that could harm this defendant Morrison, and neither can we find anything in the record that is similar to the problem in the two federal cases. We think we adequately answered this problem in our determination of Question No. 2 as outlined in our original opinion.

We find nothing herein that has not heretofore been considered. The petition of Morrison to rehear must be overruled.

## On Second Petition to Rehear

We have herein a second petition to rehear on behalf of Morrison, which is courteous, conscientious and forceful. This petition is to the effect that the defendant, Morrison, was prejudiced because in the examination of one of the arresting officers certain contents of a statement made to him by co-defendant, Culbertson, prejudiced the rights of Morrison to such an extent that the questions in reference to this statement amounted to a violation of Morrison's constitutional rights in having evidence given against him wherein the witness who gave same was not subject to cross-examination by counsel for Morrison.

. There are two cases particularly cited and relied upon in support of this contention, to-wit, *Douglas v. State of Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934; and *Pointer v. State of Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. In the Douglas case the confession of an accomplice was the only direct proof that Douglas fired the shotgun involved in the murder case and that Douglas had the requisite intent at the time he fired the weapon to commit murder. In other words the conviction in the Douglas case apparently was based upon the accomplice's confession with some slight corroboration.

In the Pointer case the chief prosecuting witness was not present for the trial, and a transcript of his testimony at the preliminary hearing where Pointer's rights of cross-examination were extremely limited was permitted in the evidence at the trial of the case. Thus, as in the Douglas case, in the Pointer case the State's case rested for the most part upon the testimony of a witness in such a manner as to deprive the defendant of a right to cross-examine.

We have carefully read these two cases and think that they are easily distinguished under the factual situation from how the trial in the original instance was conducted in the case against Morrison. Since the filing of the second petition to rehear herein, we have reexamined the record and read the testimony upon which it is contended that a new trial should be granted on the basis of the authority of the Douglas and Pointer cases. We find that in this examination these two co-defendants who were indicted along with Morrison did not take the witness stand, but that an officer, who had taken voluntary statements from them, when being cross-examined or examined by counsel, who referred to these statements, was asked if these two co-defendants did not make certain statements in their admissions to this officer of their participation in this crime. These questions where they had any reference whatsoever to Morrison were objected to, and the trial judge promptly sustained the objection to any statement made in this voluntary statement to the officer in reference to Morrison.

During this examination part of the time the jury was excused and most of the argument on the subject of the admission of these statements was done outside the presence of the jury. None of the contents of the statements got into the record. Bits of the statement did get into the record by this method of examination, but in each instance where there was the slightest reference to Morrison the court sustained the objection in this language:

"I sustain the objection as to that, as to what anyone else said, and I will only let you question him as to the defendant Culbertson, what he said, what he did, or what he said to him."

In each instance when there was anything said with reference to Morrison, the court would sustain the objection and say: "Disregard it, Gentlemen of the Jury." And again the court said when anything crept into the examination with reference to Morrison, "As to its pertaining to anyone else I am going to sustain it." And again, "I sustain that. Sustain. Sustain." Thus, we find upon a very careful re-reading of the transcript as far as this question here presented is concerned that the objection was sustained each time and the jury told not to regard that insofar as it related to anyone other than the person who had made the statement. There was none of this evidence in the record so far as Morrison is concerned.

We have consistently held in this State, and it is held in all others so far as we know, that where the trial judge "very clearly and forcibly instructs the jury that it could not be considered" then such offering is not prejudicial.

This rule was forcibly brought forth in the case of *Smith and Reynolds v. State,* 205 Tenn. 502, 327 S.W.2d 308, certiorari denied by the Supreme Court of the United States, 80 S.Ct. 372, 361 U.S. 930, 4 L.Ed.2d 354, rehearing denied 361 U.S. 973, 80 S.Ct. 585, 5 L.Ed.2d 552, in reference to jurors reading newspapers and things of the kind while a trial was going on. We have there where the court admonished the jury not to consider anything that they read and then, they having read the paper it did not constitute prejudicial evidence. Our particular comments on this question are on about pages 530, 531 and 532 of our reported case, 327 S.W.2d 308.

The basis of such a judgment is that to warrant a reversal for things of the kind it must reasonably appear

that jurors, or at least some of them, have been influenced or prejudiced to the extent that they cannot be fairly impartial. Such evidence is absolutely lacking in this case. From a practical standpoint to those of us who have had trial experience it would be impossible to ever complete a trial, if the mere asking of a question, which was prejudicial, an objection sustained, and the jury told not to consider it, would be considered reversible error. This cannot be so unless it appears to the court in reviewing the matter that some prejudice must have accrued to the party objecting.

This rule is particularly applicable in the case now under consideration. For one reason, very strong positive testimony by the witness Calloway, who was the victim of the assault, is given as to Morrison. In her testimony she definitely identified Morrison as her assailant and she testified that the other boys "begged him" (Morrison) to leave her alone. This is quite a different situation from that in the Douglas or Pointer cases. The statements objected to here in the present case only remotely corroborated the testimony of the chief or prime State's witness, Calloway. The jury was told not to consider these statements in any way in reference to Morrison. We must conclude that the jury made up of citizens of high intelligence, fair minded men and women, and jurors who adhere to the rulings of the court, because the court has their respect, were told and knew that they use the court as a witness as to what the law is and more or less should and do take the law as given them by the court. The court is their witness as to what this is; they have respect for him and heed what he says. This being true, when these questionable questions are asked, objections sustained to them and the jury told

not to consider them, this clearly is non-prejudicial and is no basis for a reversal. The facts of this case are entirely different from the facts of the two cases particularly relied upon, above set forth.

After having fully considered this matter we are satisfied that there was absolutely no prejudice herein as to the defendant, Morrison, and that the motion for a rehearing should be denied. It is so denied.