George FAJERIAK, Appellant,

v.

STATE of Alaska, Appellee.

No. 794.

Supreme Court of Alaska.

April 1, 1968.

Joseph L. Young and James D. Gilmore, Anchorage, Court-appointed counsel for appellant.

Robert N. Opland, Dist. Atty., and Leroy J. Barker, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, J.

NESBETT, Chief Justice.

Appellant was convicted of the first degree murder of Anthony Rizzo upon the eye witness testimony of Dean Gamradt and

James Benton.[1] Appellant's defense, as outlined in his counsel's opening statement, was that Gamradt and Rizzo were both homosexuals who were strongly attracted to appellant and that Gamradt killed Rizzo because he was a competitor with Gamradt for the homosexual attention of appellant.

The first question to be resolved is whether the trial court unduly restricted the defendant-appellant's right to cross-examine a state's witness.

During the direct examination of Dean Gamradt the State inquired whether he was a homosexual. His answer was "no". On cross-examination counsel for appellant inquired whether he knew any homosexuals and whether he was familiar with their vernacular. The answers to both questions were in the affirmative. The witness was then asked whether he knew what a "Queen" was in homosexual vernacular. At this point the district attorney objected on the ground that the question was beyond the scope of the direct examination. The objection was sustained. The court explained its ruling by stating that the defense would not be allowed to try the witness for homosexuality during the course of a first degree murder trial and pointed out that appellant could recall the witness Gamradt later to prove his defense if. he desired to do so.

Appellant now contends that the court's ruling was an unwarranted restriction of his constitutional right to confront and cross-examine witnesses.[2] Appellant argues that because the prosecution asked the witness whether he was a homosexual, the subject was a proper one for cross-examination and his right to a full and fair cross-examination on the subject of the direct examination was violated by the ruling. Appellant represents that it is only after the defendant has been afforded a full and fair cross-examination on the subject matter of the direct examination that the limitation of the scope of further cross-examination can become a matter within the court's discretion.

Appellee's position is that the court did not in fact limit appellant's cross-examination of the witness Gamradt as alleged, but that it merely limited the scope of inquiry on what was at best a collateral issue, his knowledge of homosexual vernacular.

■ The permissible scope of cross-examination is governed in Alaska by Civil Rule 43(g) (7) which states:

An adverse party may cross examine a witness as to any matter stated in the direct examination or connected therewith, and in so doing may interrogate the witness by leading questions.

In Pedersen v. State[3] this court held that the trial judge was vested with wide discretion in controlling the scope of cross-examination. We now hold that the trial

---

1. The testimony in brief was that: Benton, Gamradt, Rizzo and appellant were all residents of the Tiltin Hilton Hotel in Anchorage and had gone moose hunting together on the Kenai Peninsula on November 7, 1965. Benton was driving the automobile as the party was returning to Anchorage. Rizzo was riding in the front seat next to Benton. Appellant was in the rear seat behind Rizzo. Gamradt was also in the rear seat behind Benton. Rizzo was asleep when appellant leaned forward and said to Benton, "No matter what happens now, don't get frightened, just keep driving". Appellant then shot Rizzo in the back several times, reloaded the pistol and fired several more shots into his back remarking, "This is for New York" and "This son of a bitch has had this coming for a long time · from New York". Appellant then pulled Rizzo off the driver and said, "One more for good measure," and shot him again in the neck. Appellant then caused the car to be stopped and cut Rizzo's stomach open with a hunting knife so that the body would sink. With the assistance of the other passengers the body was then thrown into the tidal waters of Turnagain Arm, an extension of Cook Inlet.

2. In Pointer v. State of Texas, 380 U.S. 400, 403, 406, 407, 85 S.Ct. 1065, 13 L. Ed.2d 923, 926, 928 (1965), it was held that the confrontation clause of the Sixth Amendment to the United States Constitution was applicable to the states of the union.

3. 420 P.2d 327, 337-338 (Alaska 1966).

court's ruling concerning the permissible scope of cross-examination will not be disturbed on appeal in the absence of an abuse of discretion.

■ The court did not err in sustaining the appellee's objection. Appellant's right to cross-examine was not unreasonably curtailed.[4] His attempt to continue to cross-examine the witness on the collateral subject of his knowledge of homosexual vernacular was not improperly restricted.[5] The court appropriately pointed out that if appellant desired to examine the witness in areas which might prove his defense that Gamradt had committed the murder, he should recall Gamradt as his own witness at the time he presented his defense.

The next question is whether the trial court abused its discretion when it refused to permit appellant to examine the state's witness Gamradt by leading questions, as though he was a hostile witness, when recalled to the stand by appellant as a defense witness.

Appellant relies on that portion of Civil Rule 43(g) (12) which states:

A party may interrogate any unwilling or hostile witness by leading questions.

and argues that Gamradt should have been considered a hostile witness because of his "clear alignment of interest with the State" and because of "antagonism directed to appellant". In support of his claim of clear alignment and antagonism appellant emphasizes that his defense was that Gamradt had killed Rizzo and alleges in his brief:

Only Gamradt and Fajeriak (appellant) knew exactly what happended in the back seat of Benton's automobile. If Fajeriak was not the murderer, then Gamradt had to be. Fajeriak had already testified that Gamradt did the killing.

In denying appellant's request that he be permitted to examine Gamradt as a hostile witness the court explained that a showing of hostility must have first been made before he could be considered hostile.

■ In the writer's opinion, the trial court was correct. Professor Wigmore says that the reason for not permitting a party to examine his own witness by leading questions is to prevent false testimony from being suggested to a friendly witness by the form of the question.[6] A witness is assumed to be friendly to the party calling him, but if he in fact or by reason of alignment, turns out to be hostile to that party, no reason exists for prohibiting his examination by leading questions.[7]

■ The above reasoning reflects the basis for the common law rule. Federal decisions interpreting Federal Rule of Civil Procedure 43(b), which is identical with that portion of our Civil Rule 43(g) (12) with which we are here concerned, also require that a showing of hostility be made before the witness may be examined by leading questions.[8] I so interpret the requirements of Civil Rule 43(g) (12).

This court has held that whether leading questions are to be permitted lies within the discretion of the trial court,[9] which will not be interfered with on appeal in the absence of an abuse. Appellant has not invited our attention to any portion of the record that would indicate that Gamradt was in fact hostile and we have found none. Appellant relies on his assertion that he had already testified that Gamradt did the killing as a basis for the presumption that Gamradt was clearly aligned with the State. Our examination of the record has convinced us that appellant is in error as to this assertion. Appellant had not testified

4. Many of the authorities cited by appellant relate to situations where no opportunity to cross-examine was afforded.

5. Wesner v. People, 126 Colo. 400, 250 P. 2d 124, 127 (1952).

6. 3 J. Wigmore, Evidence, § 769 (3rd ed. 1940).

7. 3 J. Wigmore, Evidence, § 909 (3rd ed. 1940).

8. Rossano v. Blue Plate Foods, Inc., 314 F.2d 174, 178 (5th Cir.), cert. denied, 375 U.S. 866, 84 S.Ct. 139, 11 L.Ed.2d 93 (1963).

9. Groseth v. Ness, 421 P.2d 624, 633 (Alaska 1966).

at the time it was attempted to examine Gamradt as a hostile witness.[10] In my opinion, no showing of alignment sufficient to support a presumption of hostility was made. My colleagues disagree with me on this point and the majority view on the question of hostility by alignment is set out in the separate opinion of Justice Dimond.

Appellant's third point is that the trial court erred in admitting the testimony of Jack Ebner and John Martinson to the effect that Dean Gamradt did not have the general reputation of being a homosexual in his home town of Brainerd, Minnesota.

Appellant's defense was that Gamradt, prompted by jealousy, had killed Rizzo. Appellant took the stand in his own defense and testified that Gamradt was a homosexual. In rebuttal the State called Ebner and Martinson. Both testified that they had known Gamradt in Brainerd, Minnesota for about twelve years up until 1965 (we have been unable to establish a day or month from the record); that they had visited him in California in September of 1965; that they knew his general reputation in Brainerd and that he did not have the reputation of being a homosexual. The homicide herein occurred on November 7, 1965.

Appellant relies upon the general rule that evidence of the good character of a witness is not admissible unless the character of that witness has first been attacked and contends that since he introduced evidence of Gamradt's homosexual behaviour only to show a motive for killing Rizzo and his bias toward appellant, it was error for the court to permit the State to introduce reputation evidence of his good moral character.

■ We do not agree. Appellant's testimony that Gamradt was a homosexual and had engaged in homosexual activities with him was an impeachment of his moral character, even though it may have been offered to prove bias or motive. The State had a right to rebut appellant's evidence of motive and bias and under the circumstances need not have confined its rebuttal to specific acts as appellant argues. Evidence of general reputation was admissible even though it tended also to rehabilitate the witness Gamradt and reestablish his good moral character.[11]

Appellant next urges that the testimony of Ebner and Martinson was too remote as to time and place. Gamradt was 23 years of age at the time the homicide was committed in November of 1965. Both witnesses had been well acquainted with him for twelve years ending in 1965, as they grew up from boyhood together in Brainerd, Minnesota. In September of 1965 they had both visited with Gamradt in California for a period of approximately two weeks, during which time they met and associated briefly with appellant.

■ The admissability of reputation evidence objected to on the ground of remoteness lies in the discretion of the trial judge, whose ruling will not be disturbed on appeal absent an abuse of discretion. There is no exact formula for determining when evidence is too remote. The question must be decided by the trial judge on the particular facts of each case.[12] Remoteness, if not too great, goes to the weight, rather than to the admissibility.[13] We do not find that the trial judge abused his discretion in admitting the testimony of Ebner and Martinson under the facts of this case.

■ We do not believe that the testimony of Ebner and Martinson can be considered to have been prejudicially cumula-

---

10. Appellant's counsel had, however, stated the nature of his defense in his statement at the close of the State's case.

11. Commonwealth v. Weatherwax, 166 Pa. Super. 586, 73 A.2d 427, 429 (1950); See also: 4 J. Wigmore, Evidence, §§ 1104, 1107 (3rd ed.1940).

12. Strickland v. State, 37 Ariz. 368, 294 P. 617, 621 (1930).

13. Strader v. State, 208 Tenn. 192, 344 S.W.2d 546, 549, 87 A.L.R.2d 963 (1961).

tive as appellant urges, by having artificially increased the probative strength of Gamradt's testimony and his credibility as a witness in the manner described in Homan v. United States.[14]

Appellant's final point on appeal is that the court erred in refusing to instruct the jury that the testimony of Gamradt and Benton should be viewed with distrust and in refusing to give appellant's proposed instruction number one, quoted below.[15]

Appellant argues that the testimony in this case "reveals a high degree of participation by both Gamradt and Benton" and states in his brief:

> Both Benton and Gamradt assisted Fajeriak in carrying the body to the shore. Benton testified to a conversation between Gamradt and Fajeriak just before the shooting and Gamradt admitted he had a loaded pistol in his hand at the time of the shooting. Gamradt returned to the car and brought a knife down so that Rizzo's stomach could be split open. Both had access to weapons and were in a position to utilize them to capture Fajeriak. Both remained in the car while Fajeriak made a telephone call from a gas station on the outskirts of Anchorage. Both helped dispose of the effects of the crime, and both remained silent until apprehended by the police. The court should, as a matter of law, have found both Benton and Gamradt were accomplices. The rule is mandatory. The instruction must be given in a "proper" case.

Appellant relies upon Criminal Rule 30 (b) which provides that the court shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict, and whether requested to do so or not shall give, on all proper occasions, an instruction:

> That the testimony of an accomplice ought to be viewed with distrust and the oral admissions of a party with caution.

Appellant concedes that it might be argued that the facts of this case do not require a finding by the trial court that Gamradt and Benton were accomplices as a matter of law, but argues, nevertheless, that the facts could create an inference in the minds of the jury that they were accomplices; in which case the question should have been put to the jury under the instruction proposed.

Appellee relies upon the definition of an accomplice given by this court in Mahle v. State,[16] as follows:

> An accomplice is generally defined as one who in some manner, knowingly and with criminal intent aids, abets, assists or participates in a criminal act.

and argues that the crime in the case at bar is murder; that to be an accomplice to this crime Benton and Gamradt must have assisted the appellant in shooting Rizzo and that the crime of murder was completed when Rizzo was shot and killed. Appellee summarizes the testimony pertinent to his legal argument in his brief as follows:

> Witness Benton testified that the appellant shot the victim. Witness Gamradt testified that the appellant shot the victim. Benton testified out of fear of the appellant he assisted in removing the

14. 279 F.2d 767, 772–773 (8th Cir.), cert. denied, 364 U.S. 866, 81 S.Ct. 110, 5 L. Ed.2d 88 (1960).

15. Appellant's proposed instruction no. 1 states:

> A conviction may not be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense.
>
> An accomplice is one who is liable to prosecution for the identical offense charged against the defendant on trial. Whether or not any witness in this case was an accomplice as defined in these instructions is for the jury to determine from all the testimony and the circumstances as shown by the evidence.
>
> To render a person an accomplice, he or she must in some manner knowingly and with criminal intent aid and abet or have advised and encouraged the commission of the criminal act charged.

16. 371 P.2d 21, 25 (Alaska 1962).

body from the vehicle to the bank near the bay. Benton testified that Gamradt on orders of the appellant got a knife from the vehicle. The appellant cut open the body of the victim so it would sink and pushed it out to sea. Witness Gamradt testified to the same set of occurrences. The appellant on the other hand denied shooting the victim Rizzo and denied cutting open the victim's body. The testimony is in clear conflict. Either the appellant was the murderer or Benton and Gamradt were the murderers. Benton and Gamradt denied killing Rizzo. The victim died of the gunshot wounds and was dead when the knife injury was received.

Appellee argues that there is no evidence in this case that Gamradt or Benton assisted the appellant to shoot the victim; that there is no evidence of a pre-arranged plan between Gamradt, Benton and appellant with respect to the shooting; that the fact that they may have known that a crime was being committed at the time the shooting was perpetrated does not make them accomplices; that concealment of their knowledge of the crime does not make them accomplices and that if they were guilty of any crime, they were guilty of being accessories after the fact as defined by Alaska Statute.[17]

 We agree with the appellee. There is no evidence in the record from which it could be inferred that Benton and Gamradt had in any manner, knowingly and with criminal intent, aided, abetted, assisted or participated with Fajeriak in committing the murder. The trial judge was therefore correct in determining as a

matter of law that they were not accomplices.[18] Since there was no basis in the evidence from which it could be inferred that Benton and Gamradt were accomplices of appellant, the trial judge correctly refused to submit the question to the jury under appellant's proposed instruction number one.

The judgment is affirmed.

DIMOND, Justice, joined by RABINOWITZ, Justice (concurring in the result).

 Civ.R. 43(g) (12) states:

A party may interrogate any unwilling or hostile witness by leading questions.

In his opinion the Chief Justice holds that the trial court did not abuse its discretion when it refused to permit appellant to examine the State's witness, Gamradt, by leading questions, because there was no showing that this witness was hostile. I disagree. As a witness for the State, Gamradt testified that appellant did the killing. In his opening statement to the jury made before Gamradt was called as a defense witness, counsel for appellant stated that "the defense will ask you to acquit George Fajeriak of the crime, because the killer of Anthony Rizzo was Dean Raymond Gamradt." I believe this clearly supports a presumption that when Gamradt was called by the defense he would be a hostile witness, "hostile" meaning inimical or unfriendly. I do not see how Gamradt could be considered to be friendly when he had accused appellant of committing the crime and when appellant's counsel indicated to the jury that Gamradt was guilty of the crime.

However, I can concur in the result reached by the Chief Justice in affirming

17. AS 12.15.010 states:
The distinction between an accessory before the fact and a principal, and between principals in the first and second degree is abrogated; and all persons concerned in the commission of a crime, whether they directly commit the act constituting the crime or, though not present, aid and abet in its commission, shall be prosecuted, tried, and punished as principals.
AS 12.15.020 states:

All persons who, after the commission of any felony, conceal or aid the offender with knowledge that he had committed a felony and with intent that he may avoid or escape from arrest, trial, conviction, or punishment are accessories. There are no accessories in misdemeanors.

18. Mahle v. State, 371 P.2d 21, 25 (Alaska 1962).

the judgment below because I do not believe, considering the entire record, that the trial court's refusal to allow defense counsel to interrogate Gamradt by leading questions was prejudicial error.